[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-11460

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
April 4, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-03620-CV-JTC-1

ANGEL FLIGHT OF GEORGIA, INC.,

Plaintiff-Appellee,

versus

ANGEL FLIGHT AMERICA, INC.,

Intervenor-Defendant,
Appellant,

ANGEL FLIGHT SOUTHEAST, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(April 4, 2008)**

Before ANDERSON, BLACK and HILL, Circuit Judges.

BLACK, Circuit Judge:

Since the early 1980s, private pilot organizations have operated throughout the United States, arranging for volunteer pilots to transport needy patients and donated organs to hospitals around the country. Historically, many of these organizations have used the service mark "Angel Flight" to promote their services and solicit donations.

In 2000, a number of private pilot organizations banded together to form a national association known as Angel Flight America (AFA). The new association divided the country into territorial zones, authorizing its members to operate in designated geographical regions using the Angel Flight mark. For reasons that are unclear, several longstanding Angel Flight organizations, including Angel Flight Georgia (AFGA), did not become members of AFA. Nevertheless, these organizations continued operating in their home territories using the Angel Flight mark.

When AFA member Angel Flight Southeast (AFSE) established offices in Georgia and began soliciting donations in areas where AFGA had traditionally operated, AFGA sued AFA and AFSE for common law trademark infringement and various related violations of state and federal law. AFA counterclaimed for infringement of its United States Trademark No. 1,491,541 (the Angel Flight mark) and other related claims.

Following a five-day bench trial, the district court found in favor of AFGA on all claims and later issued a permanent injunction prohibiting AFA and its members from using the Angel Flight mark in Georgia, Alabama, Mississippi, Tennessee, North Carolina, and South Carolina for the purpose of soliciting donations, advertising or promoting their services, or recruiting volunteers.

## I.  FACTS

### A.  History of Angel Flight

In 1982, Jack Welsh, a pilot living in California, formed an organization called the American Medical Flight Support Team (AMFST).  The organization consisted of volunteer pilots who agreed to provide free transportation for donated organs and medical patients to ensure the timely receipt of needed medical services.  Chapters of the new organization sprang up across the country.  Many of these chapters eventually adopted the name "Angel Flight" as their service mark.  Over time, the chapters lost their connection to the original organization, but they continued their mission of providing free air transportation for medical services.  The organizations continued to use the Angel Flight mark.

In 1983, an AMFST chapter was formed in Georgia.  It later took the name Angel Flight of Georgia (AFGA).  The organization was the first group east of the Rocky Mountains to use the name Angel Flight and the first group to use the mark

in each of the six states in which it operates (Georgia, Alabama, South Carolina, Mississippi, North Carolina, and Tennessee). AFGA used the Angel Flight mark continuously from the 1980s onward.

In 1986, an AMFST chapter formed in Florida. This group later became known as AFSE. The organization operated primarily within the state of Florida, but made periodic handoffs in the AFGA territory. For several years during the 1990s, AFGA contracted with AFSE to coordinate AFGA's flights; the arrangement ended in 1999. At some point during the 1990s, AFSE and AFGA considered merging, but failed to do so.

In 2000, a number of regional Angel Flight organizations came together to form AFA. Although many regional Angel Flight organizations joined the association, several did not. Among those was AFGA. Members of the newly-formed organization divided the country into geographic regions, with each accepting responsibility for a region.

Before joining AFA, AFSE served Florida patients and medical facilities, transporting patients and organs into and out of the state of Florida. After joining AFA, AFSE began operating in Florida, Georgia, Mississippi, Alabama, and South Carolina. AFSE also began recruiting donors and promoting its services at trade shows and to medical facilities within AFGA's territory.

4

In 2001, AFGA became aware of AFSE's plans to open an office in Augusta, Georgia. On May 8, 2003, after AFGA allegedly learned donors and the news media were confusing the two organizations, AFGA wrote to AFSE, asking it to stop promoting its services under the Angel Flight mark in Georgia, Alabama, South Carolina, Mississippi, North Carolina, and Tennessee. When AFSE refused to do so, AFGA filed suit.

*B. The Registered Mark*

Sometime in the early 1980s, an AMSFT chapter in Las Vegas, Nevada, developed a mark that combined the words "The Angel Flight" with a winged caduceus. During the same period of time, a Los Angeles-based AMSFT chapter (later known as Angel Flight West) began using the same mark, with permission from the Las Vegas chapter. When the Las Vegas group later became defunct, Angel Flight West continued to use the mark, which it modified slightly by altering the design of the wings and adding a stylized type to the words "Angel Flight."

In 1987, after confirming the Las Vegas organization was no longer in existence, Angel Flight West applied for registration of the modified mark. The registration application was completed by Dennis Torres, then-president of Angel Flight West. On the application, Torres listed a "first use" date of November 21,

1983. That date preceded the creation of the modified logo by more than three years.

In the same trademark application, Torres represented that Angel Flight West was the owner of the mark and, to the best of his knowledge and belief, no other person, firm, corporation, or association had the right to use the mark in commerce, either in an identical form or a near resemblance such as would be likely to cause confusion or mistake or deceive. Despite this representation, at the time the registration application was completed, other organizations were using the name Angel Flight (or The Angel Flight) in connection with volunteer pilot efforts in other states. Some of these groups were in contact with Angel Flight West.

On June 7, 1988, the Patent and Trademark Office issued U.S. Trademark No. 1,491,541 to Angel Flight West for the following combination of words and symbols:

In May 2001, Angel Flight West assigned the registered mark to the newly-formed AFA. In turn, AFA licensed the mark to its affiliated member organizations.

6

*C. Proceedings in the District Court*

On November 23, 2003, AFGA filed suit against AFSE alleging AFSE had engaged in false designation of origin and false advertising under the Lanham Act and common law trademark infringement, unfair competition, deceptive trade practices, and other related state law claims. When AFA intervened in the lawsuit six months later, AFA and AFSE raised counterclaims mirroring those brought against them by AFGA.

In July 2006, the district court conducted a five-day bench trial. Afterward, the court issued a 95-page opinion, adopting with slight modification the facts and legal conclusions propounded by AFGA. The district court ruled in AFGA's favor on all its claims, and against AFA and AFSE on each of their counterclaims. The court determined Angel Flight West had committed fraud on the Patent and Trademark Office by falsifying information on its application for trademark registration, including the date of first use and its knowledge of others' right to use the mark in an identical or nearly identical fashion. Four months later, the court entered a permanent injunction, enjoining defendant AFA and its members from using the Angel Flight mark in Georgia, Alabama, Mississippi, Tennessee, North Carolina, or South Carolina for the purpose of soliciting donations, advertising,

7

promoting their services, or recruiting volunteers. At the same time, the court cancelled U.S. Trademark No. 1,491,541.

## II. DISCUSSION

AFA and AFSE raise four issues on appeal. They contend the district court erred by (1) relying on hearsay testimony to find their use of the Angel Flight mark in AFGA's territory resulted in actual confusion, and thus constituted infringement; (2) refusing to apply the doctrine of laches or acquiescence to bar AFGA's enforcement of its common law rights in the mark; (3) crafting an overly broad, "draconian" injunction; and (4) cancelling United States Trademark No. 1,491,541 on the ground Angel Flight West procured it fraudulently.

### A. Infringement

Following trial, the district court found AFGA was the senior user of the Angel Flight mark in the relevant geographical region—a finding appellants do not challenge on appeal. As the senior user of the mark, AFGA had the right to use the mark in its territory and to enjoin others from doing so in a manner likely to cause confusion. *See Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d. 641, 647 (11th Cir. 2007) ("[T]he touchstone of liability in a trademark infringement action is not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause consumer confusion."); *Jellibeans,*

8

*Inc. v. Skating Clubs of Ga., Inc.*, 716 F.2d 833, 839 (11th Cir. 1983) (noting test

for service mark infringement has "been expressed as whether or not the offending

mark is 'likely to cause confusion'").[1]

In its order following trial, the district court provided two reasons for

concluding AFA and AFSE had infringed AFGA's common law rights. First, the

court found consumer confusion was likely given the manner in which AFSE used

the mark in the relevant territory. Second, the court found AFSE's use of the mark

had resulted in the actual confusion of hospital employees and would-be donors on

more than 100 occasions.

AFA and AFSE object strongly to the evidentiary basis for the incidents of

"actual confusion" referred to in the district court order, contending it was

inadmissible hearsay. No confused donors or medical personnel testified at trial;

rather, two AFGA employees testified regarding the content of conversations they

---

[1] In their arguments before the district court, the parties cited only federal cases when discussing AFGA's trademark claims and the equitable defenses AFA and AFSE raised to those claims. They have done the same in this Court. However, it is clear from the complaint that AFGA's trademark infringement claim arose under state law, not federal law. Cpt. ¶¶ 41-42; *see also* Dist. Ct. "Findings of Fact and Conclusions of Law" dated Nov. 20, 2006, at 3-4 (hereinafter "Dist. Ct. Order") (cataloging AFGA's claims, including its claim of "common law trademark infringement"). Georgia law therefore governs the trademark claims at issue on appeal. Nevertheless, recognizing the paucity of Georgia cases addressing common law trademark infringement, we look to federal law as persuasive authority, as Georgia courts themselves have done on occasion. *See Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.*, 201 Ga. App. 805, 807, 412 S.E.2d 588, 590 (Ga. Ct. App. 1991).

allegedly had with would-be donors and medical personnel, in which the donors reported misdirecting donations and the medical professionals reported problems with medical transportation. In all cases, third parties allegedly confused AFGA with AFSE, and vice-versa.

During trial, the district court received the evidence under Fed. R. Evid. 803(3), the hearsay exception permitting receipt of out of court statements for the purpose of showing the declarant's "confused" state of mind. In its opinion, however, the district court recounted as fact the stories of actual confusion relayed by AFGA's employees. By finding the incidents described to the employees by the out of court declarants had actually taken place, the court used the statements as evidence of the truth of the matters asserted—a classic hearsay purpose. Fed. R. Evid. 801(c).

What AFA and AFSE overlook, however, is that although the evidence of actual confusion occupied a large portion of the district court opinion, it was largely superfluous to the court's ultimate finding of infringement. Again, it is essential to remember infringement turns on whether a likelihood of confusion exists. *Jellibeans, Inc.*, 716 F.2d at 839. To determine whether it does, Georgia courts examine many factors, including "the strength or distinctiveness of the trademark at issue; similarity or overall impression created by the designs;

10

similarity of product; identity of retail outlets and purchasers; identity of advertising media used; defendant's intent; and actual confusion." *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.*, 201 Ga. App. 805, 806, 412 S.E.2d 588, 589 (Ga. Ct. App. 1991) (citing *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1538 (11th Cir. 1986)). The best evidence, of course, is proof of actual confusion, but such evidence is not essential to a common law infringement claim. *Id.*

To prove infringement, AFGA was not required to show consumers were actually confused, but rather that consumer confusion was likely to result from the manner in which AFSE used the mark in the relevant territory. Even if the evidence of actual confusion were excluded, there remains ample evidence to support the district court's finding that confusion was likely. As the court explained:

> [T]he ANGEL FLIGHT word mark used by Defendants AFA and AFSE in the Territory is identical to that used by AFGA in the Territory for over twenty years. AFSE, AFA and AFGA all use the mark ANGEL FLIGHT in conjunction with identical services, i.e., public benefit flying. Moreover, AFSE, AFA, and AFGA also target the same consumers—pilots, patients, hospitals and donors—in conjunction with these identical services, and have identical advertising methods—radio, television and fundraisers.

Dist. Ct. Order at 64. In addition, the district court found appellants had intentionally exploited the goodwill associated with AFGA's mark by opening a

11

new office in Atlanta during the course of litigation and had reached out to established AFGA donors to insert itself into AFGA's relationships with those donors. *Id.* at 69. In short, AFGA, AFA and AFSE used the same mark in the same territory directed to the same entities by the same means. The risk of confusion was self-evident; therefore, the district court did not err by concluding consumers were likely to be confused by the concurrent use of the Angel Flight mark in the same territory by both AFSE and AFGA and that AFSE therefore infringed AFGA's common law trademark rights.

## B. Laches and Acquiescence

When the district court has weighed the proper factors in determining whether a defendant has proven the elements of a laches defense, we review the district court's decision for abuse of discretion. *See AmBrit, Inc.*, 812 F.2d at 1545-46. The same standard applies to review of a decision regarding the defense of acquiescence. *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1558 (11th Cir. 1991).

To prove the affirmative defense of laches under Georgia law, a defendant must show it would be inequitable to allow the plaintiff to enforce his legal rights. *Whiten v. Murray*, 267 Ga. App. 417, 422, 599 S.E.2d 346, 352 (Ga. Ct. App. 2004). "Whether laches should apply depends on a consideration of the particular

12

circumstances, including the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, [and] the opportunity for the claimant to have acted sooner. . . ." *Id.* In the context of trademark infringement, a defendant invoking laches typically must show the plaintiff inexcusably delayed in enforcing its trademark rights, thereby causing the defendant undue prejudice. *Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d 1540, 1546 (11th Cir. 1984).

The defense of acquiescence requires proof of three elements: (1) the plaintiff actively represented it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice. *Coach House Rest.*, 934 F.2d at 1558. "The difference between acquiescence and laches is that laches denotes passive consent and acquiescence denotes active consent." *Id.*

Appellants argue strenuously the district court erred when it concluded they had not "met their burden" of proving the affirmative defenses of laches and acquiescence. They focus particularly on the court's finding that AFGA did not unreasonably delay before bringing its lawsuit, offering many reasons why they believe their position was correct. They do not, however, provide any reason why

this Court should find, as a matter of law, the district court abused its discretion by crediting AFGA's evidence rather than their own.

After hearing the evidence, the district court found AFSE's use of the mark had been limited within the territory until shortly after AFA was formed. The court also found that before 2001 AFSE's only use of the mark within the territory related to flying patients and organs in and out of the area. After 2001, AFSE opened branch offices in the territory and began soliciting donations and promoting its services.

Under the doctrine of progressive encroachment, "delay is to be measured from the time at which the plaintiff knows or should know she has a provable claim for infringement." *Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199, 1206 (11th Cir. 1997); *see also* 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 31.19 (4th ed. 1997) ("The senior user has no obligation to sue until the likelihood of confusion looms large. . . ."). The district court found AFSE's change of tack in 2001 justified the timing of AFGA's lawsuit. That finding was supported by the evidence and was not an abuse of discretion.

Furthermore, even if AFA and AFSE had proven their affirmative defenses, AFGA would still be entitled to a permanent injunction because the court found

14

that the concurrent use of the Angel Flight mark by AFSE and AFGA had caused

and would continue to cause confusion among members of the public. As the

district court explained:

> Laches and acquiesence are inapplicable to the facts of this case
> because the public is confused, and AFA and AFSE admit as much.
> Laches or acquiesence do not preclude the Court's issuance of an
> injunction to prevent further acts of trademark confusion by AFA and
> AFSE. Even in cases where these defenses bar a suit for damages due
> to inequity to the infringer, the Court may still grant injunctive relief
> to avoid "putting a judicial stamp of approval on conduct which will
> confuse consumer."

*Id.* at 77-78 (quoting 6 J. Thomas McCarthy, *McCarthy on Trademarks and*

*Unfair Competition* § 31.10 (4th ed. 1997)). "When inevitable confusion occurs in

the marketplace due to unrestricted dual use of a trademark, the paramount value

of the public interest demands some adjustment to the status quo," even in cases

involving acquiesence. *SunAmerica Corp. v. Sun Life Assur. Co. of Canada*, 77

F.3d 1325, 1337 (11th Cir. 1996). *See also Coach House Rest.*, 934 F.2d at 1564

("[I]f there is an inevitability of confusion, [a] petitioner's law suit may be revived

from estoppel").

In this case, confusion was inevitable. Consequently, regardless whether

AFGA's delay in bringing suit was excusable, the district court did not err in

rejecting appellants' affirmative defenses as bars to injunctive relief.

*C. Permanent Injunction*

Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006). After hearing argument and receiving evidence from all parties, the district court made findings with respect to each of these factors and issued an injunction prohibiting AFA and its members (including AFSE) from using the Angel Flight mark in Georgia, Alabama, Mississippi, Tennessee, North Carolina, and South Carolina for the purpose of soliciting donations, advertising or promoting their services, or recruiting volunteers. The injunction allows AFA and its members to continue using the mark to identify planes flying into and out of these states and to continue their promotional and recruitment efforts in other states.[2]

---

[2] As an example, AFSE volunteers could use the mark while flying patients from Florida to Georgia. However, AFSE volunteers could not display the mark on materials used to recruit pilots or solicit donations in the State of Georgia.

We review the decision to grant an injunction and the scope of the injunction for abuse of discretion. *Fed. Election Comm'n v. Reform Party of the United States*, 479 F.3d 1302, 1306 (11th Cir. 2007) (grant or denial of injunction); *CBS Broad., Inc. v. EchoStar Commc'ns Corp.*, 450 F.3d 505, 517 n.25 (11th Cir. 2006) (scope of injunction).

AFA and AFSE challenge the district court's determination that a permanent injunction would not harm the public interest. They argue the public interest at stake in this case is the interest in accessing free medical transportation—an interest they contend is compromised by the terms of the injunction. AFGA disagrees and points to a long line of trademark cases in which this Court has explained the "public interest" relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion. *See, e.g.*, *Davidoff & CIE, S.A. v. PLD Intern. Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) ("[T]he public interest is served by preventing consumer confusion in the marketplace."); *SunAmerica Corp.*, 77 F.3d at 1334 (noting even in cases involving acquiescence, "the public interest in preventing confusion around the marketplace is paramount to any inequity caused the junior user" by issuance of injunction); *Coach House Rest.,* 934 F.2d at 1564 ("[P]ublic interest in preventing confusion around the marketplace is paramount. . . .").

17

Although AFA and AFSE concede avoiding confusion is a legitimate public interest, they insist it cannot be the only public interest considered by the court when deciding whether to issue an injunction. Appellants take the position that because no litigant can win a trademark infringement lawsuit without proving it likely that the public will be confused by similarities between the original and infringing marks, the "public interest" in an injunction must be more than a mere interest in avoiding confusion. Were that not the case, an injunction would issue in *every* trademark action where infringement has been shown.

Appellants' observation is not far off the mark. As this Court has stated previously, in "ordinary trademark infringement actions . . . complete injunctions against the infringing party are the order of the day." *SunAmerica Corp.*, 77 F.3d at 1336. The reason is simple: the public deserves not to be led astray by the use of inevitably confusing marks—even in cases in which more than one entity has a legal right to use the mark. *Id.* at 1336-37.

Having found confusion was inevitable, the district court was entitled to enjoin AFSE and AFA from uses of the mark that would continue to cause public confusion. The court crafted an injunction that permitted AFSE and AFA to use the mark in AFGA's territory in the same manner AFSE had done prior to 2001. Under the terms of the injunction, AFSE and AFA may use the mark in connection

18

with flying patients into and out of the relevant territory. They are enjoined only from soliciting funds and promoting their services within AFGA's territory—the actions that prompted AFGA's decision to bring this lawsuit. We find no error in the decision to issue the injunction or in the injunction's scope.

*D. United States Trademark Registration No. 1,491,541*

In any action involving a registered mark, a court may order the cancellation of the registration, in whole or in part, when such action is warranted. *See* 15 U.S.C. § 1119. One ground on which a party may petition to cancel a registered service mark is that the registration was obtained fraudulently. 15 U.S.C. § 064(3). Fraud occurs when an applicant knowingly makes false, material representations of fact in connection with an application for a registered mark. *Metro Traffic Control, Inc. v. Shadow Network Inc.*, 104 F.3d 336, 340 (Fed. Cir. 1997). The party seeking to cancel a mark bears the burden of proving the alleged fraud by clear and convincing evidence. *Citibank*, 724 F.2d at 1544.

The district court cancelled AFA's registered Angel Flight mark after finding Angel Flight West (the original owner of the Angel Flight mark) committed two acts of fraud when applying for registration. Specifically, the court found Angel Flight West's president, Dennis Torres, (1) intentionally provided an incorrect first date of use for the registered mark; and (2) purposely failed to

19

disclose use of the term "Angel Flight" by other organizations (such as AFGA and AFSE) even though he was aware other groups were using the name and had a right to do so. We review for clear error the district court's finding that fraud was committed. *Id.*

"A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the filing date." *Car Subx Serv. Sys., Inc. v. Exxon Corp.*, 215 U.S.P.Q. 345, 351 (P.T.O. T.T.A.B. 1982); *see also Pony Exp. Courier Corp. of America v. Pony Exp. Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989). At trial Gary Davis, a board member of Angel Flight West and the only witness to provide extensive testimony at trial regarding Angel Flight West's acquisition and modification of the registered mark,[3] testified AMFST-Las Vegas began using an early version of the mark in or before 1983. Angel Flight West began using the same early version of the mark soon thereafter. Although Angel Flight West did not modify the mark to its current form until sometime shortly before it filed the registration application in 1986 (making a first use date of 1983 a technical impossibility), it is clear from

---

[3] Angel Flight West's pro bono counsel, Billy Robbins, testified by deposition. His testimony, however, was limited to confirming that he had filed the registration application on behalf of Angel Flight West. Robbins denied knowledge of the history of Angel Flight West's use of the mark or knowledge of any other organizations' use of the Angel Flight mark.

Davis's testimony and documents admitted into evidence that Angel Flight West began using the modified mark before it applied to register the mark.

The district court found Angel Flight West committed fraud by intentionally providing an incorrect first date of use on its registration application. However, because the uncontroverted testimony established Angel Flight West made valid use of the mark prior to the date it filed its registration application, the improper first use date contained in the application cannot be a basis for invalidating the registration.

The more difficult question is whether sufficient evidence supports the district court's finding that Dennis Torres purposely failed to disclose on the registration application other organizations' use of the term "Angel Flight" even though he was aware organizations throughout the country were using the name and had a right to do so. Purposely failing to disclose other users' rights to use the same or similar marks may qualify as a material omission justifying cancellation of a trademark. *See L.D. Kichler Co. v. Davoil, Inc.*, 192 F.3d 1349, 1352 (Fed. Cir. 1999) (suggesting proof of noninfringing, consequential use by others may invalidate applicant's claim when combined with proof of intent to deceive). Therefore, if the evidence was sufficient to support the district court's finding, the mark was properly cancelled.

When applying to register the Angel Flight mark, Torres declared:

> that he is President of applicant corporation and authorized to execute this Declaration on behalf of said Corporation; he believes said corporation is the owner of the mark sought to be registered; that to the best of his knowledge and belief no other person, firm, corporation, or association has the right to use said mark in commerce, either in the identical form thereof or in such near resemblance thereto as may be likely, when applied to the goods of such other person, to cause confusion, or cause mistake, or to deceive; that all statements made herein on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment or both . . . and that such willful false statements may jeopardize the validity of the application or document or any registration resulting therefrom.

To conclude Torres defrauded the Patent and Trademark Office by signing this statement, the district court had to find Torres was aware other organizations were using the Angel Flight mark (either in an identical form or a near resemblance) and "knew or believed" those other organizations had a right to use the mark. Because Torres himself did not testify at trial, the district court's findings rest on the testimony of Gary Davis.

Davis's trial testimony revealed Angel Flight West was aware other organizations were using names such as "The Angel Flight" at the time the registration application was filed, but did not disclose that information to the Patent and Trademark Office. It was possible for the trial court to infer the reason

22

Torres concealed this information was because he knew or believed the other Angel Flight organizations had an equal right to use of the Angel Flight mark.

The district court ruled Angel Flight West committed fraud in connection with its trademark application when Dennis Torres represented that, to "the best of his knowledge and belief no other person, firm, corporation, or association ha[d] the right to use" the Angel Flight mark. That ruling was not clearly erroneous; consequently, the district court did not err by invalidating United States Trademark Registration No. 1,491,541 on the basis of the alleged fraud.

## III. CONCLUSION

We AFFIRM the district court's ruling in its entirety. The district court did not err in ruling (1) AFSE infringed AFGA's common law trademark rights by using the mark in a manner that created a substantial risk of confusion; and (2) AFGA had not acquiesced to AFSE's infringing use and was not estopped by laches from enforcing its common law rights in the mark. Similarly, the injunction entered by the district court, which was tailored to protect AFGA's rights and ensure the public would not be confused, was properly entered. Finally, the district court did not clearly err by cancelling United States Trademark No. 1,491,541 on the ground the registration had been obtained through fraud.

**AFFIRMED.**

23