RICHARD W. STORY, UNITED STATES DISTRICT JUDGE
*1358 This case came before the Court for a bench trial on July 17, 2017 through July 19, 2017. Having heard the evidence and the arguments, the Court enters the following findings of fact and conclusions of law.
Findings of Fact
Plaintiff Playnation Play Systems, Inc. ("Plaintiff") manufactures and sells children's outdoor playground equipment using the trademark "Gorilla Playsets." Defendant Velex Corporation ("Defendant") sells doorway pull-up bars for all ages, as well as attachable accessories for children, including swings, trapezes, and rings, using the trademark "Gorilla Gym."
Plaintiff's mark predates that of Defendant, and the two marks are in the same category. When choosing the name "Gorilla Gym," Defendant went through a long and thoughtful process considering a multitude of names. Defendant did not utilize a lawyer in applying for its trademark. One of Defendant's cofounders performed a search of all registered trademarks using the word "gorilla" himself. Although he does not recall seeing Plaintiff's trademark, he admits that he must have seen it when performing this search. In light of this process, the Court finds that at the time Defendant registered its trademark for "Gorilla Gym," it did not intend to infringe upon Plaintiff's trademark.
Once Plaintiff learned of Defendant's use of the trademark "Gorilla Gym," it did not send a cease-and-desist letter to Defendant. It instead served Defendant with the complaint in this action. Upon receiving the complaint, Defendant tried to contact Plaintiff in an attempt to resolve this matter. Plaintiff was not responsive to Defendant's calls. Since the filing of the complaint, however, Defendant has continued to utilize the trademark "Gorilla Gym" on its products.
As stipulated by the parties, Plaintiff's mark is valid and has priority over Defendant's mark, which Defendant used in the retail market without Plaintiff's consent. At issue, therefore, is whether a likelihood of confusion exists at the retail level.
As the Court held in its prior Order [48], Plaintiff's mark is either descriptive or suggestive, but its strength is enhanced by extraneous circumstances. (Order, Dkt. [48], at 8-9, 11.) Plaintiff's mark is therefore strong. There is a strong similarity between Plaintiff's mark and Defendant's mark. The products offered by Plaintiff and Defendant are also similar. Both Plaintiff and Defendant use the same sales and advertising methods. Finally, there were instances of actual confusion by customers. Accordingly, there is a likelihood of confusion at the retail level.
Finally, the Court finds that Defendant's gross sales totaled $7,430,632,[1] the vast majority of which related to Defendant's sale of products used by children. The Court finds that overhead expenses of Defendant that were actually related to the sale of infringing products totaled $5,157,915.
*1359 Conclusions of Law
A. Trademark Infringement
Liability for infringement under the Lanham Act requires proof that Defendant "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in a way that "is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). The Lanham Act protects the public from confusion in the marketplace by prohibiting the unauthorized use of registered trademarks or service marks. Id."In order to prevail on a trademark infringement claim based on a federally registered mark, the registrant must show that (1) its mark was used in commerce by the defendant without the registrant's consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc., 496 F.3d 1231, 1241 (11th Cir. 2007) (internal citations omitted).
As stipulated by the parties, Plaintiff's mark is valid and has priority over Defendant's mark, which Defendant used in the retail market without Plaintiff's consent. (Pretrial Order, Ex. E., Dkt. [65].) The Court must therefore decide whether Plaintiff has shown "a likelihood of confusion at the retail level." Optimum Techs., 496 F.3d at 1241-42. As discussed above, a likelihood of confusion does exist. Defendant is therefore liable for trademark infringement under the Lanham Act.
B. Injunctive Relief
To obtain permanent injunctive relief, Plaintiff must show:
(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.
Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008). Injunctions against an infringing party in trademark actions are "the order of the day" because "the public deserves not to be led astray by the use of inevitably confusing marks-even in cases in which more than one entity has a legal right to use the mark." Id. at 1209. "[A] sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... [a] substantial threat of irreparable harm." Ferrellgas Partners, L.P. v. Barrow, 143 Fed. App'x 180, 191 (11th Cir. 2005) (alternations in original) (quoting McDonald's Corp. v. Robertson, 147 F.3d 1301, 1310 (11th Cir. 1998) ). Additionally, "it is generally recognized in trademark infringement cases that (1) there is not adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm." Tally-Ho, Inc. v. Coast Cmty. Coll. Dist., 889 F.2d 1018, 1029 (11th Cir. 1989) (quoting Processed Plastic Co. v. Warner Commc'ns, 675 F.2d 852, 858 (7th Cir. 1982) ).
Plaintiff has made a strong showing of likelihood of confusion. It has therefore satisfied the first two prongs required for injunctive relief. Under the third prong, the Court must balance the hardships between Plaintiff and Defendant. The Court finds that potential harm to plaintiff through the loss of control of its mark and through loss of goodwill outweigh any harm to Defendant. The third prong for injunctive relief is therefore satisfied. Finally, the Court must consider the public interest. In trademark infringement cases, "the 'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion." Angel Flight, 522 F.3d at 1209.
*1360 Because there is a likelihood of confusion stemming from Defendant's use of the mark, the public interest is best served by Defendant being prevented from using the mark.
Plaintiff has satisfied all four prongs necessary for injunctive relief. The Court therefore enters a permanent injunction against Defendant enjoining it from:
(1) developing, manufacturing, importing, using, marketing, selling, offering for sale, distributing, or installing any children's playground equipment or related accessories under the GORILLA GYM Name, or any variant thereof that is a colorable imitation or otherwise likely to be mistaken for or confused with PlayNation's GORILLA PLAYSETS Mark;
(2) using its trade name "GORILLA GYM" or "GORILLA GYM INDOOR PLAYGROUND" for the development, manufacture, import, use, marketing, sale, offering for sale, distribution, or installation of any children's playground equipment or related accessories, or any variant thereof which is a colorable imitation of or otherwise likely to be mistaken for or confused with PlayNation's GORILLA PLAYSETS Mark;
(3) otherwise infringing upon PlayNation's GORILLA PLAYSETS Mark; and
(4) otherwise unfairly competing with PlayNation or engaging in any deceptive trade practice, trading off of PlayNation's reputation or goodwill, or injuring PlayNation's reputation.
C. Damages
The damage provision of the Lanham Act entitles a trademark holder to recover, among other things, the profits earned by a defendant from infringement of the mark. 15 U.S.C. § 1117. The district court has wide discretion in determining the proper relief. Burger King Corp. v. Mason, 855 F.2d 779, 781 (11th Cir. 1988). Plaintiff is entitled to Defendant's profits if one of three circumstances exists: "(1) the defendant's conduct was willful and deliberate, (2) the defendant was unjustly enriched, or (3) it is necessary to deter future conduct." Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 Fed. App'x 899, 902 (11th Cir. 2007).
A willful violation of a trademark occurs "where the infringer was 'knowingly and deliberately cashing in upon the good will of [the infringed].' " Id. at 903 (alteration in original) (quoting Burger King, 855 F.2d at 781 ). Nothing in this case suggests that Defendant initially intended to confuse the public when it chose to use the name Gorilla Gym. However, Defendant continued to use Gorilla Gym even after being served with a complaint in this action. Willfulness may be inferred from this deliberate continuation after being put on notice that it could be liable for trademark infringement. See Tiramisu Int'l LLC v. Clever Imports LLC, 741 F.Supp.2d 1279, 1289 (S.D. Fla. 2010). Defendant's conduct creates an inference of willfulness, and Plaintiff is therefore entitled to any profits resulting from Defendant's infringing conduct.
Pursuant to section 1117(a), "[i]n assessing profits, the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." Maltina Corp. v. Cawy Bottling Co., 613 F.2d 582, 584 n.1 (5th Cir. 1980). Thus, Plaintiff need only show Defendant's gross sales. The burden then shifts to Defendant to prove the inaccuracy of Plaintiff's calculations and any costs that should be deducted from the gross sales. Id. at 586. And, the costs that may be deducted are only those that are *1361 "actually related" to the sale of the infringing product. Id.
The Court finds that Defendant's gross sales totaled $7,430,632. After deducting returns and allowances and the costs of the goods sold, the Court finds that the net profit, or merchandise margin, for the goods sold was $5,308,103. Defendant asserts that overhead expenses should also be deducted. "[A] proportionate share of overhead is not deductible when the sales of an infringing product constitute only a small percentage of total sales." Id. However, in the present case, the infringing sales constitute a high percentage of the total sales. Therefore, the Court finds that a deduction for overhead, with certain exceptions, is appropriate. The Court declines to deduct legal expenses because, for the most part, those expenses are associated with the defense of this action. The Court also declines to deduct expenses for taxes. L.P. Larson, Jr., Co. v. Wm. Wrigley, Jr., Co., 277 U.S. 97, 48 S.Ct. 449, 72 L.Ed. 800 (1928). Finally, the Court declines to deduct interest costs as the Court finds that such costs are not actually related to the sale of the infringing goods. Otherwise, the Court finds the overhead expenses of Defendant to be deductible. The Court finds the sum of these expenses to be $5,157,915.
Accordingly, the Court finds that the total profits of Defendant that Plaintiff is entitled to recover are $150,188.
D. Costs and Attorney's Fees
The Lanham Act provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Eleventh Circuit has defined "exceptional case" as "one that can be characterized as malicious, fraudulent, deliberate and willful, or one in which evidence of fraud or bad faith exists." Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335 (11th Cir. 2001) (internal citations and quotations omitted). This standard has, however, been called into question by a 2014 Supreme Court decision interpreting identical language in the Patent Act. Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 134 S.Ct. 1749, 1756, 188 L.Ed.2d 816 (2014).
In Octane Fitness, the Court rejected the Federal Circuit's "unduly rigid" standard, which allowed fees to be awarded "only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both brought in subjective bad faith and objectively baseless." Id. (internal quotations omitted). Instead, the Court held:
an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.
Id. Although the Eleventh Circuit has yet to consider Octane Fitness's effect in Lanham Act cases, district courts in this circuit and other circuit courts have consistently held that this new standard equally applies under the Lanham Act. See, e.g., Tobinick v. Novella, 207 F. Supp. 3d 1332, 1342 (S.D. Fla. 2016) (compiling cases); Donut Joe's, Inc. v. Interveston Food Servs., LLC, 116 F. Supp. 3d 1290, 1292 (N.D. Ala. 2015) (same). The Court agrees that the standard set forth in Octane Fitness applies to the Lanham Act's attorney fees provision.
Even under this more lenient standard, the Court finds that this is not an exceptional case that would warrant an *1362 award of attorney's fees. The Court finds that the strength of Plaintiff's case does not stand out from other trademark cases and that, with the exception of its failure to cease using the Gorilla Gym mark, Defendant did not act unreasonably in responding to Plaintiff's suit. While the Court does find Defendant's conduct willful for purposes of awarding profits as damages, that finding was predicated on an inference from Defendant's conduct after it was served with a complaint in this action. Prior to that service, Defendant did not receive a cease-and-desist letter asking it to discontinue its use of Gorilla Gym. After being served, Defendant attempted to contact Plaintiff to try to resolve this matter without litigation; Plaintiff never spoke with Defendant. Additionally, the Court finds that Defendant did not deliberately choose the name Gorilla Gym in an attempt to infringe on Plaintiff's mark.
The Court therefore finds that this is not an exceptional case and declines to award attorney's fees to Plaintiff.
E. Cancellation of Defendant's Federal Trademark Registration
"In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. As stated above, Defendant no longer has the right to use the name Gorilla Gym. The Court hereby cancels Defendant's Trademark Registration No. 4,463,558. The Clerk of Court shall certify this decision to the Director of the United States Patent and Trademark Office for entry on the records of the Patent and Trademark Office.
Conclusion
In accordance with the foregoing, the Clerk shall enter judgment in favor of Plaintiff awarding Plaintiff $150,188 in damage. A permanent injunction is entered against Defendant. Defendant's Trademark Registration No. 4,463,558 is canceled, and the Clerk shall certify this decision to the Director of the United States Patent and Trademark Office for entry on the records of the Patent and Trademark Office. As the prevailing party, Plaintiff is entitled to recover costs as authorized by 18 U.S.C. § 1920.
SO ORDERED , this 26th day of July, 2017.

The parties stipulated to Defendant's gross revenues for 2013, 2014, and 2015. (Pretrial Order, Ex. E., Dkt. [65].) However, based upon the evidence submitted at trial, it appears that the gross revenues stated for 2013 and 2015 were actually net sales after deduction for returns and allowances. Accordingly, the Court finds that the gross revenues for 2013 were $56,457 and for 2015 were $2,401,871, rather than $50,276 and $2,376,989, respectively, as stated in the stipulations.