A04A0655. WHITEN v. MURRAY et al.
(599 SE2d 346)

BLACKBURN, Presiding Judge.

In this equitable action regarding the existence of an implied trust, Melessa C. Whiten appeals the trial court's grant of summary judgment to appellees, Billy Ray Murray, Jr., John and Debra Weems (the "Weems"), and Dean and Anita Michaud (the "Michauds"),[1] arguing that the trial court erred in: (1) holding that the Michauds were bona fide purchasers of the property without notice; (2) holding that Whiten had an adequate remedy at law, thereby preventing her equitable claims; and (3) basing its grant of summary judgment on Whiten's failure to plead a remedy at law. For the reasons set forth below, we affirm in part and reverse in part.

> The party moving for summary judgment has the burden of showing the absence of a genuine issue of any material fact and if the trial court is presented with a choice of inferences to be drawn from the facts all inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion. A litigant has a right to a trial where there is the slightest doubt as to the facts. All inferences from the evidence introduced will be interpreted favorably toward making an issue of fact.

---

[1] Whiten filed her appeal in the Supreme Court of Georgia. Finding that the appeal did not invoke its equity jurisdiction, the Supreme Court transferred the appeal to this Court.

Thus, to prevail on motion for summary judgment, the movant has the burden to produce evidence which conclusively eliminates all material issues in the case.

(Citations and punctuation omitted.) *Lewis v. C & S Nat. Bank.*[2] A de novo standard of review applies to an appeal from a grant of summary judgment. *Matjoulis v. Integon Gen. Ins. Corp.*[3]

Viewed in the light most favorable to Whiten, the record shows that in 1996, Whiten and Murray, who were married at the time, entered into an agreement with the Weems, under which the Weems agreed to purchase a certain tract of land and obtain financing for the purchase and Whiten and Murray would make all payments on the property, keep the property insured, pay the property taxes, and maintain and keep up the property. The understanding of the parties was that the Weems would eventually transfer fee simple ownership of the property to Whiten and Murray but that, if necessary, the property could remain in the Weems' name until the loan was paid in full. This agreement was never reduced to writing as required by the Statute of Frauds, but, because of the partial performance of the parties under the oral contract, the agreement would be removed from the statute. OCGA § 13-5-31 (3).

In 1998, Whiten and Murray were divorced; at the time of the divorce, the transfer of the property from the Weems to Whiten and Murray still had not occurred. The divorce decree incorporated a separation agreement which required Murray to make the monthly payments on the property and to quitclaim any and all interest he had in the property to Whiten.

After the divorce, Murray made all the mortgage payments on the property in a timely manner until the property was sold by the Weems to the Michauds in August 2002. Whiten paid the taxes on the property for tax years 1998 and 1999 and reimbursed the Weems for taxes they paid on the property for tax years 2000 and 2001.

On August 29, 2002, the Weems transferred the property by warranty deed to the Michauds, who paid $18,000 for the property. Subsequently, the Michauds filed suit against Whiten and Murray in the Magistrate Court of Stephens County to have the mobile home located on the property removed.

On January 15, 2003, Whiten filed a complaint in equity to establish a constructive trust on the property. Whiten also made a claim for fraud. Whiten asked that the deed be declared void and that

---

[2] *Lewis v. C & S Nat. Bank*, 139 Ga. App. 855, 860-861 (1) (b) (229 SE2d 765) (1976).

[3] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

she be declared the owner of the property. In the alternative, she asked for damages in the amount of the fair market value of the property.

The appellees filed a motion to dismiss, alleging that the Michauds were bona fide purchasers for value without notice and that Whiten was guilty of laches and unclean hands. The motion to dismiss was converted into a motion for summary judgment, which was granted by the superior court. This appeal followed.

1. As a preliminary matter, we affirm the trial court's grant of summary judgment to Billy Ray Murray, Jr. As the trial court found, Murray quitclaimed any interest he had in the property to Whiten and, in the absence in the record of any misrepresentations made to Whiten, is entitled to judgment in his favor as to Whiten's claims.

2. Whiten argues that the trial court erred in holding that the Michauds were bona fide purchasers for value without notice of Whiten's right to and interest in the property. Before we address the merits of Whiten's first enumeration of error, we must determine whether an implied trust arose in Whiten's favor. In doing so, we find the decision of our Supreme Court in *Hancock v. Hancock*[4] particularly instructive. In setting forth basic principles regarding implied trusts, the Supreme Court said:

> Trusts are either express or implied. . . . Trusts are implied:
> 1. Whenever the legal title is in one person, but the beneficial interest, either from the payment of the purchase money or other circumstances, is either wholly or partially in another.
> 2. Where, from any fraud, one person obtains the title to property which rightly belongs to another. 3. Where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title should have no beneficial interest. Thus it will be seen that implied trusts arise under varying circumstances. Such trusts are divided into two categories; resulting trusts and constructive trusts, and sometimes it is exceedingly difficult to differentiate between the two; but ordinarily distinctions are unnecessary since both are implied trusts and are governed by the same rules. Generally trusts arising under the first and third classifications in the cited Code section are resulting trusts, while those arising under the second classification are constructive trusts. Not infrequently in the case of resulting trusts no fraud exists, such trusts resting primarily on an implication of law from the nature of the transaction;

---

[4] *Hancock v. Hancock*, 205 Ga. 684 (54 SE2d 385) (1949).

but generally, if not necessarily, the element of fraud is present in constructive trusts.

Sometimes a trust partakes of the nature of both a resulting and a constructive trust. For instance (aside from those cases calling for special considerations, as where there arises an inference of a gift), if A purchases land, paying the purchase-price therefor, and for convenience, or by agreement with B, the legal title is placed in B's name, a resulting trust arises in favor of A; and if B, who had every intention of conveying the property to A, should die, his heirs or representative would hold the property impressed with a resulting trust, although no fraud had entered into the transaction. If, under the same circumstances, B took title, having induced the transaction, intending at the time to break the agreement and appropriate the property to his own use, or after acquiring the title formed such an evil and dishonest intention, which was followed by a retention or disposition of the trust res, this would constitute fraud, and he would hold the property or the proceeds as a trustee ex maleficio. Thus, what in the beginning might have been a resulting trust may by subsequent events partake more of the nature of a constructive trust.

(Citation and punctuation omitted.) Id. at 689-690.

The facts and circumstances in the present case are similar to those described in *Hancock*. Though title to the property was in the Weems, a resulting trust arose in favor of Whiten and Murray through their payment of monthly payments to the financing company and taxes. By the terms of the divorce settlement, and pursuant to the quitclaim deed executed by Murray, the equitable interest lay solely in Whiten. The sale of the property by the Weems to the Michauds, after all mortgage payments on the property and tax payments had been made by Whiten or Murray, constituted fraud, a constructive trust then arose in favor of Whiten, and the Weems held the property or the proceeds as trustees ex maleficio for Whiten. As in the example given in *Hancock*, what was in the beginning a resulting trust came, by subsequent events, to partake more of the nature of a constructive trust.

We note further that "a constructive trust is a remedy created by a court in equity to prevent unjust enrichment." *St. Paul Mercury Ins.*

*Co. v. Meeks.*[5] "Equity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Weekes v. Gay.*[6] In this case, to allow the Weems to retain the proceeds of the sale of the property when they had made no payments toward purchase of the property would result in just such an inequitable windfall recovery to them.

Having concluded that an implied trust exists in favor of Whiten, the question is whether the Michauds were bona fide purchasers for value without notice of Whiten's interest.

> A bona fide purchaser for value is protected against outstanding equitable interests in land of which the purchaser has no notice. Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact due to negligence shall be equivalent to knowledge in fixing the rights of parties.

(Punctuation and footnote omitted.) *R. W. Holdco, Inc. v. SCI/RW Holdco, Inc.*[7]

It is uncontested, as the trial court held, that the Michauds did not have notice of any interest of record since neither Whiten nor Murray was in the chain of title. Whiten concedes as much and argues instead that the issue is possession and whether her possession of the property constituted actual or constructive notice to the Michauds of her right to the property.

> Possession of land shall constitute notice of the rights or title of the occupant. In order for the possession to have the effect of notice, it must be actual, open, visible, exclusive, and unambiguous. He who takes with notice of an equity takes subject to that equity. Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found that such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge in fixing the rights of the parties.

(Citations and punctuation omitted.) *Bacote v. Wyckoff.*[8]

In light of the foregoing equitable principles, we conclude that the trial court erred in holding that the Michauds were bona fide

---

[5] *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998).

[6] *Weekes v. Gay*, 243 Ga. 784, 787 (3) (256 SE2d 901) (1979).

[7] *R. W. Holdco, Inc. v. SCI/RW Holdco, Inc.*, 250 Ga.App. 414, 415 (1) (551 SE2d 825) (2001).

[8] *Bacote v. Wyckoff*, 251 Ga. 862, 866 (2) (310 SE2d 520) (1984).

purchasers of the property without notice of Whiten's interest. The record shows that Whiten had a mobile home on the property and that the Michauds, aware of her interest in the home on the property, filed suit against her and Murray to have the home removed. The record also shows that the Michauds lived across the road from Whiten's property, that they were aware of her divorce from Murray, and that, shortly after the Michauds bought the property from the Weems, Dean Michaud went onto the property and confronted Whiten, who told him to stay off the property. These facts demonstrate that Whiten was in actual, open, visible, exclusive, and unambiguous possession of the property and that the Michauds had an affirmative duty to inquire of Whiten concerning her rights in the premises; as a consequence of their failure to do so, they may not now prevail.

We go further to point out that even if the Michauds had been bona fide purchasers without notice, Whiten's action in equity nonetheless would have survived and the trial court's grant of summary judgment would have been error. As *Hancock* makes clear, where one takes title to property and, after acquiring title, forms an evil and dishonest intention to appropriate the property to his own use, which is followed by retention or disposition of the trust res, he holds the property *or the proceeds* as a trustee ex maleficio. Thus, even if the Michauds were protected because they had no notice of Whiten's interest in the property, the proceeds of the sale of the property held by the Weems would be impressed with a constructive trust in favor of Whiten.

The appellees argue that Whiten's claims are barred by the doctrines of laches and unclean hands. We find neither of these defenses applicable.

Under OCGA § 53-12-93 (b), a person claiming the beneficial interest in property may be found to have waived the right to a constructive trust by subsequent ratification or long acquiescence.

> In addition, courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights. Whether laches should apply depends on a consideration of the particular circumstances, including the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for the delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay. These factors are relevant because laches is not merely a question

of time, but principally a matter of inequity in permitting the claim to be enforced.

(Citations and punctuation omitted.) *Cagle v. Cagle.*[9]
    "By analogy to the doctrine that an action for the recovery of land can be defeated by prescriptive title resulting from possession for seven years under color of title, an action to enforce an implied trust must generally be brought within seven years from the time the action accrues." *Richards v. Richards.*[10] In this case, Whiten's action in equity accrued in August 2002, when she learned that the Michauds were claiming title to the property. Id. Whiten filed her complaint in equity on January 15, 2003, less than a year after the action accrued. It is clear, then, that she is not guilty of laches.
    The appellees also assert that Whiten had unclean hands because she did not list the property as an asset in a bankruptcy petition she had filed and which was active at the time of the sale of the property,[11] and because she asked Murray to take title to the property in his own name when she was going through a later divorce. Again, we disagree.

> The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience. It must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.

(Citation and punctuation omitted.) *Partain v. Maddox.*[12] Neither Whiten's bankruptcy petition nor her divorce concerned parties to the present action and is thus not directly related to that action. Moreover, though asked by Whiten to do so, Murray never put title to the property in his name; since no representation that the property was in Murray's hands was ever made, Whiten cannot be said to have had unclean hands in that matter. *Fuller v. Fuller*[13] (holding that unclean

---

[9] *Cagle v. Cagle*, 277 Ga. 219, 220 (1) (586 SE2d 665) (2003).
[10] *Richards v. Richards*, 209 Ga. 839, 843 (3) (76 SE2d 492) (1953).
[11] We note that the appellees did not raise the affirmative defense of judicial estoppel in their answer. See, e.g., *Cochran v. Emory Univ.*, 251 Ga. App. 737 (555 SE2d 96) (2001); *Dillard-Winecoff, LLC v. IBF Participating Income Fund*, 250 Ga. App. 602 (552 SE2d 523) (2001). If an affirmative defense is not pled in the answer, it is waived. *Brown v. Little*, 227 Ga. App. 484, 485 (1) (489 SE2d 596) (1997).
[12] *Partain v. Maddox*, 227 Ga. 623, 637-638 (4) (182 SE2d 450) (1971).
[13] *Fuller v. Fuller*, 211 Ga. 201, 203 (84 SE2d 665) (1954).

hands rule did not apply where party fell short of executing fraudulent purpose and thus was guilty of no wrong).

3. Whiten also maintains that the trial court erred in granting summary judgment to the appellees by holding that she had an adequate remedy at law. We agree.

> Constructive or implied trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. Trusts are children of equity. A court of law may entertain them; but when the case is complicated, especially when it has a flavor of fraud, equity will not banish them, and remit the parties to another forum. As against a trustee ex maleficio, the person injured is entitled to recover the property wrongfully obtained or in equity subject it and its income to such a trust; and if the trust property cannot be traced, the fact that an action might have been brought at law for damages or that the plaintiff may in his suit to establish the trust also seek a money judgment for the proceeds of the trust property, will not divest equity of jurisdiction.

(Citations and punctuation omitted.) *Bateman v. Patterson.*[14] Hence, in this case, it was error for the trial judge to grant summary judgment to the appellees on the ground that Whiten had an adequate remedy at law.

4. Our holding in Division 3 renders Whiten's third enumeration of error moot.

*Judgment affirmed in part and reversed in part. Barnes and Mikell, JJ., concur.*

DECIDED MAY 14, 2004.

*McClure, Ramsay, Dickerson & Escoe, Bambi N. Carswell*, for appellant.

*Smith & Tabor, Donald C. Tabor, Jeffery S. Malcom*, for appellees.

---

[14] *Bateman v. Patterson*, 212 Ga. 284, 285 (2) (92 SE2d 8) (1956).