A08A2138. TROUTMAN v. TROUTMAN et al.
(676 SE2d 787)

SMITH, Presiding Judge.

In this dispute involving the imposition of a constructive trust on certain real property,[1] Stinson Troutman appeals from a jury verdict in favor of his father, Leroy Troutman, and his siblings, Stephen Troutman, Barbara Troutman, Rosemary Troutman Walker, Wilber Troutman, and Freeman Troutman. Because the evidence demanded a verdict in favor of Stinson Troutman, we reverse.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the any evidence test.

(Citation and punctuation omitted.) *RHL Properties v. Neese*, 293 Ga. App. 838 (668 SE2d 828) (2008).

The evidence reveals that Leroy Troutman owned a one-half undivided interest in approximately 461 acres of land in Wilcox County. His brother, Roosevelt Troutman, owned the other half of the undivided interest. When Leroy's wife became ill, he applied for social security benefits to assist in her care, but was denied. He was advised that in order to qualify for federal assistance, he should transfer his interest in the 461 acres to another party.

In 1989, during a family meeting about the need to get the title out of Leroy's name, the family agreed "to let Stin[son] work it."

---

[1] This appeal was originally filed in the Supreme Court of Georgia. The Supreme Court transferred the case to this court, concluding that it was without jurisdiction to hear the appeal because the issues presented do not "fall within the definition of title to land cases," and the "grant or denial of equitable relief in this case is ancillary to the underlying legal and factual issues." Although it appears to us that all the issues here are equitable in nature, that determination, of course, is not ours to make. We note that the matter apparently is not free from all doubt, however, since the vote by the Justices to transfer this case was 4-3: "All the Justices concur, except Hunstein, P. J., Carley and Melton, JJ., who dissent."

Leroy testified that "Stinson wanted to farm it, and the rest of them didn't want to farm it," and that for this reason, he agreed to convey the property to Stinson. Leroy and Stinson met with Leroy's lawyer, Benjamin Easterlin, and requested that Easterlin prepare a deed to transfer the property to Stinson. Leroy signed the deed, and it was recorded on January 10, 1989. Although Leroy conveyed the property only to Stinson "in order to get help," he testified that he intended for the property to "go to all of [his] children."

Stinson's brother Stephen testified that he, along with his father, Stinson, and other siblings, had a family meeting in 1989. He stated that during the meeting, everyone agreed "to put the land in Stinson's name with the idea of it coming back to us after everything settles." Stephen explained that he did not want to farm the property because "it was too difficult to farm and try to make a living." He testified further that he and his siblings made payments toward the property when Stinson was unable to pay; he claimed that he paid more than $2,900 toward the care of the property during the 18 years Stinson farmed the land, but that most of his records were destroyed by fire. Stephen testified that in 2001, he had discussions with Stinson concerning the property, and that Stinson told him that "he wasn't going to pay the bills, the bills wasn't [sic] his, only the land was his. The deed was his and the debt was ours."

Stinson's sister Barbara testified that Stinson "was going to farm the land and the land belonged to the rest of us, but he was going to farm it, and all the proceeds, the debt and everything, he was going to take care of it." She stated that in early 2000, she became concerned about Stinson's failure to make payments on the property's debt and that Stinson's response was that "the land was his." She made an unspecified payment on the debt against the property when her father transferred it to Stinson. She also sent an additional unspecified sum to her father to assist in paying the debt.

Stinson testified that although the family meeting did take place, he was never asked to hold the property in trust for his siblings. He stated that the land had a substantial amount of debt attached to it and that his siblings wanted nothing to do with the property; they were "tired of it" and did not want "to pay any more money on it." Stinson stated that "[t]he agreement was that I take the land and debt a hundred percent." He stated that he was willing to accept the burden of the property's debt of nearly $200,000, but he admitted accepting money from his siblings to help pay some of it. Stinson explained that he accepted $2,490 from his sisters Rosemary and Barbara. On another occasion, he received $965 each from Stephen, Freeman, and Barbara. He stated that his father accepted $1,036 from Barbara to pay a note on the property and that Freeman also paid $3,158.72 to Roosevelt for costs associated with the farm.

Stinson stated further that he put $500,000 toward the farm over the 18 years that he farmed it, half of which was borrowed and the other half his own money that he earned from the farm.

In August 2007, Stinson's father and siblings filed a complaint seeking an equal division of the property on the basis of a constructive trust. Following a trial, a jury found in their favor and against Stinson. The trial court then entered a judgment ordering the transfer of a one-sixth undivided interest in the property to each of Stinson's siblings. Stinson appeals from the verdict arguing that the trial court erred in denying his motions for directed verdict and that the finding of a constructive trust was not supported by clear and convincing evidence.

1. We agree that the court erred in denying Stinson's motions for directed verdict. Under OCGA § 53-12-93 (a), "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." And "[w]ith regard to interests in real property, a constructive trust generally may not be imposed based solely on a broken verbal promise to hold or transfer the land for the benefit of another. To hold otherwise would wholly undermine the Statute of Frauds." *Parris v. Leifels*, 280 Ga. 135, 136 (625 SE2d 390) (2006), citing *Mays v. Perry*, 196 Ga. 729 (27 SE2d 698) (1943). "A broken verbal promise may be the basis of a constructive trust, however, if it was fraudulently made with the intention of being broken and for the purpose of thereby obtaining title." (Citations and punctuation omitted.) Id. In other words, there must be "positive fraud accompanying the promise." *Westbrook v. Westbrook*, 212 Ga. 472, 474 (93 SE2d 683) (1956).

Construing the evidence in favor of the jury's verdict, we must accept as fact that during the family meeting in 1989, Stinson agreed to hold the property in trust for his siblings. Arguing that he made the promise fraudulently, the appellees point to evidence that at some unknown time or some time after Leroy signed the warranty deed, Stinson told family members that he owned the property "free and clear." But this is not evidence that when Stinson made the promise, he did so with the intention of later breaking it so that he could retain sole ownership of the property.

Although Leroy testified that he wanted the property to "go to all of [his] children," it is undisputed that he conveyed the property so that he could receive federal assistance for his wife and that he conveyed it to Stinson because Stinson was the only family member willing to farm the land. There is no evidence that Leroy attempted to convey the property to all of his children or create a trust, nor is there any evidence that he was prevented from doing so. And it is

undisputed that he had the assistance of his own attorney to prepare the deed.

Under the facts here, there was no evidence of "positive fraud accompanying the promise." See *Parks v. Parks*, 240 Ga. 1, 2 (1) (239 SE2d 334) (1977) (no evidence of inceptive fraud); compare *Whiten v. Murray*, 267 Ga. App. 417, 420-421 (2) (599 SE2d 346) (2004) (constructive trust arose where party seeking trust made mortgage payments and paid all taxes on property); *Watkins v. Watkins*, 256 Ga. 58, 60 (1) (344 SE2d 220) (1986) (son gave conflicting evidence on issue of whether he intended to break promise to mother at time he made promise). The record supports only the conclusion that Stinson later broke the alleged promise.

Moreover, "a constructive trust is a remedy created by a court in equity to prevent unjust enrichment. Equity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." (Citations, punctuation and footnotes omitted.) *Whiten*, supra, 267 Ga. App. at 420-421 (2). Here, the evidence presented at trial showed that Stinson put more than $500,000 into the farm and worked the farm for 18 years and that his siblings chose not to work the farm and paid in comparison only a small fraction of the cost to maintain it and pay the debt on it. To allow the siblings to gain an interest in the property therefore would result in an inequitable windfall to them. See id. at 421 (2). Under these circumstances, equity would prevent the imposition of a constructive trust. Id.

The appellees argue that because they partly performed their obligation under the oral agreement by making payments toward the debt on the property, the part performance exception to the Statute of Frauds applies and it is therefore unnecessary to prove inceptive fraud. See OCGA § 13-5-31 (3).

> The statute of frauds requires that any contract for sale of lands, or any interest in, or concerning lands be in writing. It is true that the statute of frauds does not extend to those cases where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance.

(Citations and punctuation omitted.) *Lemming v. Morgan*, 228 Ga. App. 763, 764 (1) (492 SE2d 742) (1997). But "a parol contract sought to be enforced based on part performance must be certain and definite in all essential particulars." Id.

Here, it is not entirely clear that as part of the agreement the

siblings were to contribute to paying the debt. But even if this obligation were part of the agreement, the evidence showed that over an 18-year period the siblings paid less than $15,000 toward the property's debt, which was in excess of $200,000. And there was no agreement as to how much each sibling would pay toward the debt or when payment would be made. Moreover, Stephen and Barbara testified that there was no agreed-upon date for Stinson to convey the property to the siblings. Under these circumstances, the oral agreement was not sufficiently certain or definite to be enforceable. See *Lemming*, supra, 228 Ga. App. at 764 (1) (oral agreement unenforceable where no provision for time to transfer title, divide proceeds, or sell properties); compare *Perry v. Perry*, 285 Ga. App. 892, 895 (2) (648 SE2d 193) (2007) (constructive trust created where father completely performed his part of agreement by selling home and giving son the proceeds in reliance on son's promise to put new home in father's name).

Because the facts here do not support the imposition of a constructive trust, the court erred in denying Stinson's motions for directed verdict.

2. In light of our holding in Division 1, Stinson's remaining enumeration is moot.

*Judgment reversed. Mikell and Adams, JJ., concur.*

DECIDED MARCH 26, 2009.

*Balch & Bingham, Natalie M. Christensen, David J. Marmins, Lucy W. Rankin*, for appellant.

*Barnes, NeSmith & Eidson, William D. NeSmith III*, for appellees.