# STATE OF MICHIGAN

# COURT OF APPEALS

IBRAHIM NASSER,

      Plaintiff-Appellee,

v

GEORGE ABI-ABDALLAH and RODANA ABI-
ABDALLAH,

      Defendants-Appellants.

UNPUBLISHED
February 14, 2017

No. 328755
Wayne Circuit Court
LC No. 13-004366-CZ

Before: STEPHENS, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendants, George Abi-Abdallah and Rodana Ali-Abdellah, appeal as of right the trial court's judgment, entered after a bench trial, quieting title to real property in favor of plaintiff. We affirm.

## I. BACKGROUND

Plaintiff brought this action to quiet title to residential real property in Dearborn, Michigan. Plaintiff sought to purchase the property in 2006, but was unable to qualify for a mortgage, due to poor credit. Therefore, plaintiff contacted defendant George Abi-Abdallah, a business partner and acquaintance for several years, who agreed to purchase and finance the property in his own name under an arrangement whereby plaintiff would pay the mortgage payments, taxes, and insurance. Pursuant to this agreement, George obtained a mortgage from Chase Bank in 2006, plaintiff and his family moved into the house on the property, and plaintiff made the agreed payments for the mortgage and other expenses.

In 2009, plaintiff experienced financial problems. He stopped making the mortgage payments, which led to foreclosure proceedings, and he filed a petition for bankruptcy. On the advice of his attorney, plaintiff did not list the property as an asset in the bankruptcy proceeding, given that the property was in foreclosure and titled in George's name. In his 2009 tax return, plaintiff claimed a Homestead Exemption for the property as a renter. In 2011, after the bankruptcy proceeding had concluded, plaintiff borrowed money from friends and paid $49,000 to discharge the mortgage on the property in a short sale with Chase Bank. Plaintiff then asked George to sign a deed conveying legal title to the property to plaintiff. George agreed to do so, but only provided plaintiff with a copy of the original deed, which George had signed on the back. In 2013, George conveyed the property to his wife, defendant Rodana Abi-Abdallah, by

-1-

quitclaim deed, allegedly pursuant to a divorce settlement. In 2013, Rodana evicted plaintiff and his family from the property.

Plaintiff thereafter brought this action to quiet title to the property in his name. Defendants moved for summary disposition under MCR 2.116(C)(10), arguing that there was no genuine issue of material fact that plaintiff did not have any interest in the property, given that he did not list the property as an asset in his prior bankruptcy petition and had identified himself as only a renter on his 2009 tax return. Defendants also argued that plaintiff was judicially estopped from asserting an ownership interest in the property in light of his failure to disclose the property as an asset in the bankruptcy proceeding. Defendants additionally argued that plaintiff had unclean hands, thereby precluding him from obtaining equitable relief. George also moved for summary disposition under MCR 2.116(C)(3), arguing that the case should be dismissed as against him, because he was never served with an unexpired summons. The trial court rejected each of these arguments and denied defendants' motions. Following a bench trial, the trial court issued a decision in which it concluded that (1) all parties to this action had "unclean hands"; (2) the parties intended to confer ownership of the property to plaintiff; (3) that much of the documentary evidence presented to the court contained defects, and defendant George Abi-Abdallah never appeared in court to assert his position; and (4) after considering all of the evidence and testimony, title to the property should be quieted in favor of plaintiff.

## II. SERVICE OF PROCESS

We first address George's argument that the trial court erred by not granting his motion for summary disposition under MCR 2.116(C)(3), which sought dismissal on the ground that he was not timely served with the summons and complaint.

This Court reviews a trial court's summary disposition decision de novo. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). A party is entitled to summary disposition under MCR 2.116(C)(3) when "[t]he service of process was insufficient."

MCR 2.102(E)(1) and (2) provide:

(1) On the expiration of the summons as provided in subrule (D), the action is deemed dismissed without prejudice as to a defendant who has not been served with process as provided in these rules, unless the defendant has submitted to the court's jurisdiction. As to a defendant added as a party after the filing of the first complaint in the action, the time provided in this rule runs from the filing of the first pleading that names that defendant as a party.

(2) After the time stated in subrule (E)(1), the clerk shall examine the court records and enter an order dismissing the action as to a defendant who has not been served with process or submitted to the court's jurisdiction. The clerk's failure to enter a dismissal order does not continue an action deemed dismissed.

Plaintiff filed his original complaint on April 1, 2013. Rodana was served with the summons and complaint later that month. On June 20, 2014, plaintiff moved to file an amended complaint. In that motion, he acknowledged that the original complaint against George had been deemed dismissed because George was not timely served with the summons. On July 23, 2014,

-2-

the trial court entered an order granting plaintiff's motion to amend his complaint. That order also provided that "Plaintiff may serve Defendant George Abi-Abdallah the Summons and Amended Complaint by alternative service." The amended complaint was filed on July 30, 2014. On that same date, pursuant to the trial court's earlier order, service was made on George by sending him a copy of the summons and amended complaint by regular mail and Federal Express.

On August 27, 2014, George, who lived in Canada, filed a notice of removal of the action to federal court, based on diversity. The federal court later returned the case to state court, where George moved for summary disposition, arguing in part that plaintiff failed to serve him with an unexpired summons. The trial court denied the motion, expressing its belief that George had evaded service and that he had received constructive notice of the action through Rodana. We disagree with the trial court's decision.

Plaintiff had, at most, one year from the date of filing the original complaint to timely serve the summons and complaint. See MCR 2.102(D) (a summons expires 91 days after the complaint is filed, subject to extension not exceeding one year from the date the complaint is filed). Plaintiff did not dispute that the original summons and complaint were never timely served, and thus that George was deemed dismissed from the action before plaintiff filed his amended complaint in 2014. Even though the trial court granted plaintiff leave to file an amended complaint, it could not have reinstated the automatic dismissal of George due to the expired summons. See *Durfy v Kellogg*, 193 Mich App 141, 143-145; 483 NW2d 664 (1992). Therefore, we conclude that George was improperly served with an expired summons. Although defects in the manner of service generally are not a basis for dismissing a defendant, see MCR 2.105(J), this case involved a complete failure of *timely* service of process on George.

MCR 2.105(J)(3) provides that "[a]n action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." In *Hill v Frawley*, 155 Mich App 611, 613; 400 NW2d 328 (1986), this Court explained that MCR 2.105(J)(3) incorporates the time limits found in MCR 2.102(D):

> Service-of-process rules are intended to satisfy the due process requirement that a defendant be informed of the pendency of an action by the best means available, by methods reasonably calculated to give a defendant actual notice of the proceeding and an opportunity to be heard and to present objections or defenses. See *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950); *Krueger v Williams*, 410 Mich 144, 156-158; 300 NW2d 910 (1981), app dis 452 US 956; 101 S Ct 3102; 69 L Ed 2d 967 (1981).

> This constitutional precept has been included in a new section of the Michigan Court Rules, MCR 2.105(J)(3), which states: "An action shall not be dismissed for improper service of process unless the service failed to inform the defendant of the action within the time provided in these rules for service." Apparently, the time limit referred to is the 182-day period after which a summons expires. MCR 2.102(D). The use of "shall not" in the rule indicates that it is mandatory. Thus, if a defendant actually receives a copy of the summons

and complaint within the permitted time, he cannot have the action dismissed on the ground that the manner of service contravenes the rules. See generally, 1 Martin, Dean & Webster, Michigan Court Rules Practice (3d ed), pp 105-106.

In this case, the record indicates that George did not receive a copy of the summons and complaint within the time permitted by MCR 2.102(D). Any defects in the manner of service do not rectify the problem with the expired summons. The trial court also erred in ruling that service on Rodana was effectual as constructive notice to George. Even assuming that Rodana was still George's spouse at the time, there is no apparent basis for upholding service on one spouse as providing notice to the other spouse. MCR 2.105(B)(1) provides that service of process on a nonresident individual may be made by "serving a summons and a copy of the complaint in Michigan on an agent, employee, representative, sales representative, or servant of the defendant, and . . . sending a summons and a copy of the complaint by registered mail addressed to the defendant at his or her last known address." A spouse does not fall under any of the definitions included in MCR 2.105(B)(1), and Rodana was served in Canada, not Michigan. Thus, the trial court's ruling does not find support in the court rules. Although the summons and complaint were eventually mailed to George, this occurred after the summons had already expired.

The only exception to dismissal is if George submitted to the trial court's jurisdiction and waived any objections regarding the summons. MCR 2.102(E)(1) provides that "[o]n the expiration of the summons as provided in subrule (D), the action is deemed dismissed without prejudice as to a defendant who has not been served with process as provided in these rules, unless the defendant has submitted to the court's jurisdiction." Although George's initial motion sought summary disposition of plaintiff's amended complaint on the merits by arguing that there was no question of fact that plaintiff had admitted that he did not own the subject property and that his claims were barred by the statute of frauds and judicial estoppel, his motion also sought dismissal on the basis of the expired summons. Accordingly, George did not waive his objections to service by appearing in this matter. See *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 292; 731 NW2d 29 (2007).

Although we conclude that the trial court erred by failing to dismiss this action with respect to George, we also conclude that this error does not require us to reverse, vacate, or modify the trial court's judgment to the extent that it quieted title to the property in favor of plaintiff. The limited effect of the trial court's judgment was to quiet title to the property in favor of plaintiff. A judgment in a quiet title action affects only those who are parties or persons claiming through parties to the action. MCL 600.2932(1) and (3); MCR 3.411(H). See also *Richards v Tibaldi*, 272 Mich App 522, 534; 726 NW2d 770 (2006) (an action to quiet title resolves which parties involved in the litigation hold title to the property). Despite participating in this case, George never asserted any interest in the property, legal or otherwise. Moreover, the evidence disclosed that he had quit-claimed his interest in the property to Rodana before plaintiff filed this action. Because George had previously conveyed all of his interest in the property to Rodana, George was not a necessary party to plaintiff's suit to quiet title. The trial court's final order had the effect of quieting title to the property in favor of plaintiff, thereby defeating Rodana's claim of legal title. In addition, although plaintiff had requested other relief against defendants, the trial court did not award plaintiff any affirmative relief against George.

In sum, although the trial court's judgment cannot be deemed effective against George, because there was no evidence suggesting that George had a continued interest in the property and the judgment does not purport to adjudicate any claim of interest of George to the property, and because the judgment does not otherwise purport to affect George in any manner, we conclude that it is not necessary to disturb the judgment quieting title to the property in favor of plaintiff. See MCR 2.613(A) ("an error in a ruling . . . is not ground for granting a new trial, . . . or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice").

### III. UNCLEAN HANDS DOCTRINE

Defendants also argue that the trial court erred by refusing to apply the unclean hands doctrine to bar plaintiff's claims. Defendants argue that plaintiff did not have clean hands because he did not inform Chase Bank of his arrangement with George whereby George agreed to purchase and finance the property in his name on plaintiff's behalf, but plaintiff was going to make all the payments. Defendants also argue that plaintiff did not have clean hands because he did not claim an interest in the property in his 2009 bankruptcy proceeding. The trial court rejected these arguments, finding "[t]hat all of the parties to this action had 'unclean hands' and therefore everyone is on equal footing relative to being given equal treatment."

An action to quiet title is equitable in nature. *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). This Court reviews equitable actions de novo, but any factual findings made by the trial court are reviewed for clear error. *McFerren v B & B Investment Group*, 253 Mich App 517, 522; 655 NW2d 779 (2002).

Our Supreme Court has described the unclean hands doctrine as "a doctrine to be *invoked by* the Court in its discretion to protect the *integrity of* the Court." *Stachnik v Winkel*, 394 Mich 375, 386; 230 NW2d 529 (1975) (emphasis added). Because quiet-title actions are equitable in nature, the doctrine of unclean hands applies to an action to quiet title. *McFerren*, 253 Mich App at 523. When a court acts in equity, it "looks at the whole situation and grants or withholds relief as good conscience dictates." *Id.* at 522, quoting *Hunter v Slater*, 331 Mich 1, 7; 49 NW2d 33 (1951). As explained in *Attorney Gen v PowerPick Player's Club of Mich, LLC*, 287 Mich App 13, 52; 783 NW2d 515 (2010):

> It is well settled that one who seeks equitable relief must do so with clean hands. *McCluskey v Winisky*, 373 Mich 315, 321; 129 NW2d 400 (1964); *Berar Enterprises, Inc v Harmon*, 101 Mich App 216, 231; 300 NW2d 519 (1980). . . . Our Supreme Court has observed that a party who has "acted in violation of the law" is not "before a court of equity with clean hands," and is therefore "not in position to ask for any remedy in a court of equity." *Farrar v Lonsby Lumber & Coal Co*, 149 Mich 118, 121; 112 NW 726 (1907). Indeed, as stated in *Society of Good Neighbors v Mayor of Detroit*, 324 Mich 22, 28; 36 NW2d 308 (1949), a court of equity "will not lend its aid . . . to assist law violators."

The United States Supreme Court commented on the doctrine of unclean hands in *Precision Instrument Mfg Co v Auto Maintenance Machinery Co,* 324 US 806, 814-815; 65 S Ct 993, 997; 89 L Ed 1381 (1945), stating:

[The doctrine of unclean hands] is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be "the abetter of iniquity." Thus while "equity does not demand that its suitors shall have led blameless lives," as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. [Citations omitted.]

In *Precision Instrument*, the Court remarked that bad faith can only give rise to the doctrine of unclean hands if the bad faith is "relative to the matter in which [the plaintiff] seeks relief." *Id.* at 814.

Preliminarily, the trial court erred in ruling that the unclean hands doctrine would not be a basis for denying relief to plaintiff if all parties had unclean hands. The doctrine requires that the court deny equitable relief to a plaintiff with unclean hands regardless of the defendant's conduct. The doctrine means that the plaintiff must have unclean hands to obtain equitable relief from the court. It does not matter whether the defendant also had unclean hands.

However, the trial court also erred to the extent that it concluded that plaintiff had unclean hands with respect to the transaction at issue. The doctrine of unclean hands applies to a plaintiff's conduct relative to the transaction at issue, which in this case involves plaintiff's assertion of an interest in property superior to any interest by defendants. The record does not show any wrongful conduct by plaintiff' related to defendants' rights to the property. At best, defendants showed that plaintiff did not report an equitable interest in the property during the bankruptcy proceeding or on his tax return, or disclose his involvement with George to obtain the property when plaintiff could not obtain a mortgage in his own name. However, George knowingly agreed to assist plaintiff by obtaining the property for him, and any improper conduct by plaintiff with regard to his personal bankruptcy proceeding or tax returns did not involve or harm defendants. Moreover, by acquiring the property through a short sale, plaintiff likely helped George recover from further credit problems if the property had been lost through foreclosure. Given that any wrongful conduct by plaintiff' part did not directly impact defendants, the unclean hands doctrine does not bar plaintiff's claims in this case.

This case is factually similar to *Whiten v Murray*, 267 Ga App 417; 599 SE2d 346 (2004). In *Whiten*, the plaintiff Melessa Whiten ("Whiten") and the defendant Billy Ray Murray, Jr. ("Murray"), a married couple, asked defendants John and Debra Weems (the "Weems") to purchase land and obtain financing for the purchase in the Weems' name. *Id.* at 417-418. Whiten and Murray made all of the payments and maintained the property; Whiten and Murray also apparently lived on the property in a trailer during their marriage. After Whiten and Murray divorced, Murray continued to make the payments, while the Weems continued to hold title. The Weems then sold the property to another couple and transferred title by warranty deed. *Id.* at 418. Whiten brought suit to have a constructive trust declared on the property and asserted a claim for fraud. She also asked that the court declare her the owner of the property' and hold that the deed to the new owners was void. *Id.* at 418-419.

-6-

The defendants moved for summary judgment, in part, on the theory that Whiten had unclean hands because she did not include the property as an asset in her bankruptcy petition, which was still pending when the property was sold, and also because Whiten had asked Murray to take title to the property in his name because Whiten was going through a later divorce. *Id.* at 423. The trial court declined to apply the unclean hands doctrine to that case, stating:

> The unclean-hands maxim which bars a complainant in equity from obtaining relief has reference to an inequity which infects the cause of action so that to entertain it would be violative of conscience. It must relate directly to the transaction concerning which complaint is made. The rule refers to equitable rights respecting the subject-matter of the action. It does not embrace outside matters.
>
> (Citation and punctuation omitted.) *Partain v. Maddox*[, 227 Ga 623, 637-638; 182 SE2d 450]. Neither Whiten's bankruptcy petition nor her divorce concerned parties to the present action and is thus not directly related to that action. Moreover, though asked by Whiten to do so, Murray never put title to the property in his name; since no representation that the property was in Murray's hands was ever made, Whiten cannot be said to have had unclean hands in that matter. *Fuller v. Fuller* (holding that unclean hands rule did not apply where party fell short of executing fraudulent purpose and thus was guilty of no wrong). [*Whiten*, 267 Ga App at 423.]

Like in *Whiten*, plaintiff's failure to disclose a property interest in his tax returns or in his bankruptcy petition are outside matters that did not concern defendants.

Furthermore, there is no indication that plaintiff's bankruptcy was affected by his failure to disclose a potential interest in the property. This case is distinguishable from *Adams v Manown*, 328 Md 463; 615 A2d 611 (1992), in which the Maryland Court of Appeals substituted a bankruptcy trustee as the real party in interest when the plaintiff sued to recover loans made to his former girlfriend and business partner, but the plaintiff was found to have made those loans to hide the money from his wife in a pending divorce proceeding, and the plaintiff also failed to disclose the loans in his own bankruptcy proceeding.

Therefore, we uphold the trial court's refusal to apply the unclean hands doctrine as a basis for denying plaintiff relief, albeit for different reasons.

IV. QUESTIONS OF FACT

Defendants also argue that the trial court erred by denying their motion for summary disposition under MCR 2.116(C)(10), on the ground that there was no genuine issue of material fact that plaintiff had previously denied any ownership interest in the subject property. In support of this argument, defendants rely on plaintiff's failure to disclose the property as an asset in his 2009 bankruptcy proceeding, and on plaintiff's identifying himself as a renter of the property on his 2009 income tax return.

-7-

We review the trial court's summary disposition decision de novo. *Spiek,* 456 Mich at 337. A motion under MCR 2.116(C)(10) tests the factual support for a claim. Summary disposition should be granted if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula v Robertson,* 212 Mich App 45, 48; 536 NW2d 834 (1995). The court must consider the pleadings, affidavits, depositions, admissions, and any other documentary evidence submitted by the parties, and view that evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. MCR 2.116(G)(5); *Maiden v Rozwood,* 461 Mich 109, 118-120; 597 NW2d 817 (1999).

It is undisputed that plaintiff did not claim an ownership interest in the property in his bankruptcy proceeding. In addition, plaintiff claimed a Homestead Exemption for the property as a renter in his 2009 tax return. Defendants argue that these statements prove that there was no genuine issue of material fact that plaintiff did not own the property. We disagree.

First, the evidence showed that plaintiff did not have legal title to the property at the time he made these representations. In addition, plaintiff presented evidence that he was advised by his bankruptcy attorney that because title to the property was in George's name, and the property was in foreclosure, he was not required to list the property as an asset in his bankruptcy petition. The trial court found, and we agree, that these circumstances established a genuine issue of material fact regarding the claimed nature of plaintiff's property interest in 2009.

Furthermore, even if plaintiff denied an ownership interest in the property in 2009, he thereafter discharged the mortgage for the property by paying the bank $49,000 in a short sale in 2011. Because that transaction was material to plaintiff's claimed interest in the property in the present action, and it occurred after plaintiff's statements in the bankruptcy proceeding and on his tax returns, the trial court did not err by rejecting defendants' argument that the prior statements barred plaintiff's present claim as a matter law.

## V. JUDICIAL ESTOPPEL

Defendants also argue that, given plaintiff's failure to disclose an interest in the property in his 2009 bankruptcy petition, he was judicially estoppel from claiming an interest in the property in the present action, thereby entitling them to summary disposition under either MCR 2.116(C)(7) or (10). We again disagree.

MCR 2.116(C)(7) permits summary disposition where a claim is barred due to the disposition of the claim before commencement of the action. *Alcona Co v Wolverine Environmental Prod, Inc*, 233 Mich App 238, 246; 590 NW2d 586 (1998). A motion under MCR 2.116(C)(7) is governed by the following standards:

> A defendant who files a motion for summary disposition under MCR 2.116(C)(7) may (but is not required to) file supportive material such as affidavits, depositions, admissions, or other documentary evidence. MCR 2.116(G)(3); *Patterson v Kleiman,* 447 Mich 429, 432; 526 NW2d 879 (1994). If such documentation is submitted, the court must consider it. MCR 2.116(G)(5). If no such documentation is submitted, the court must review the plaintiff's complaint,

accepting its well-pleaded allegations as true and construing them in a light most favorable to the plaintiff. [*Turner v Mercy Hosps & Health Servs of Detroit,* 210 Mich App 345, 348; 533 NW2d 365 (1995).]

Summary disposition should be granted under MCR 2.116(C)(10) if, except as to the amount of damages, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Babula,* 212 Mich App at 48.

In *Spohn v Van Dyke Pub Sch,* 296 Mich App 470, 479-481; 822 NW2d 239 (2012), this Court discussed the applicability of judicial estoppel in the context of a bankruptcy proceeding, stating:

Judicial estoppel is an equitable doctrine, which "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase."

This doctrine is "utilized in order to preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship.' " *Browning v. Levy,* 283 F.3d 761, 775 (6th Cir. 2002); see also *Eubanks*[ *v CBSK Fin Group, Inc,* 385 F3d 894, 897 (CA 6, 2004)] ("Judicial estoppel, however, should be applied with caution to 'avoid impinging on the truth-seeking function of the court, because the doctrine precludes a contradictory position without examining the truth of either statement.' ").

Under the "prior success model" of judicial estoppel, "a party who has *successfully* and unequivocally asserted a position in a prior proceeding is estopped from asserting an inconsistent position in a subsequent proceeding." In accordance with this model of judicial estoppel, "the mere assertion of inconsistent positions is not sufficient to invoke estoppel; rather, there must be some indication that the court in the earlier proceeding accepted that party's position as true. Further, in order for the doctrine of judicial estoppel to apply, the claims must be wholly inconsistent." The prior success model, however, "does not mean that the party against whom the judicial estoppel doctrine is to be invoked must have prevailed on the merits."

More specifically, in the context of bankruptcy proceedings, the federal courts have indicated that

to support a finding of judicial estoppel, [a reviewing court] must find that: (1) [the plaintiff] assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings; (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition; and (3) [the plaintiff's] omission did not result from mistake or inadvertence. In determining whether [the plaintiff's] conduct resulted from

mistake or inadvertence, [the reviewing] court considers whether: (1) [the plaintiff] lacked knowledge of the factual basis of the undisclosed claims; (2) [the plaintiff] had a motive for concealment; and (3) the evidence indicates an absence of bad faith. In determining whether there was an absence of bad faith, [the reviewing court] will look, in particular, at [the plaintiff's] "attempts" to advise the bankruptcy court of [the plaintiff's] omitted claim. [Footnotes omitted.]

Plaintiff's assertion of an ownership interest in the subject property in the present case was not wholly inconsistent with his failure to disclose an ownership interest in the property in the bankruptcy proceeding. First, considering that legal title to the property was in George's name at the time of the bankruptcy proceeding, that the property was in foreclosure, and that plaintiff was advised by his bankruptcy attorney that he was not required to list the property, the evidence supported a finding that plaintiff lacked knowledge of a factual basis for any obligation to disclose the property in his bankruptcy petition. It also supported a finding that this omission was not done in bad faith or with an intent to deceive the bankruptcy court.

In addition, the evidence showed that the circumstances had significantly changed since plaintiff's bankruptcy proceeding. A significant basis for plaintiff's present claim of an ownership interest in the property was his post-bankruptcy payment of $49,000 to discharge the mortgage for the property in a short sale. Given this event, which occurred after the bankruptcy proceeding had concluded, it was not wholly inconsistent for plaintiff to assert an interest in the property in the present action, despite having failed to claim a property interest in the bankruptcy proceeding. Accordingly, the trial court properly concluded that plaintiff was not judicially estopped from asserting an ownership interest in the property in this action.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Deborah A. Servitto
/s/ Douglas B. Shapiro

-10-