**SECOND DIVISION**
**BARNES, P. J.,**
**BOGGS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**July 12, 2016**

# In the Court of Appeals of Georgia

A16A0536. THE TOLSON FIRM, LLC, et al. v. SISTRUNK, JR. et al.

BOGGS, Judge.

This case involves a dispute between law partners, Hezekiah Sistrunk, Jr., and Jane Sams, a general partnership, d/b/a Cochran, Cherry, Givens, Smith, Sistrunk & Sams, P.C. a/k/a The Cochran Firm, Atlanta (collectively "the Cochran Firm" or "the plaintiffs") and a former associate attorney, Audrey Tolson, and her law firm, the Tolson Firm, LLC (collectively "Tolson" or "the defendants"), following Tolson's departure from the Cochran Firm. The plaintiffs allege that Tolson took eight cases with her when she terminated her employment with the Cochran firm and that five of the cases subsequently settled for a cumulative sum of almost three million dollars.

The defendants assert on appeal that trial court erred by denying summary judgment in their favor on the Cochran Firm's claims for breach of duty of loyalty, tortious interference with contract, unjust enrichment, breach of fiduciary duty, quantum meruit, and money had and received. Audrey Tolson also asserts that the trial court erred by granting summary judgment in favor of the Cochran Firm on her counterclaim for quantum meruit and unjust enrichment. For the reasons explained below, we affirm the trial court's denial of summary judgment to the defendants on the plaintiffs' claims for breach of fiduciary duty and duty of loyalty, as well as quantum meruit, but reverse the trial court's denial of summary judgment to the defendants on the plaintiffs' claims for money had and received, unjust enrichment, and tortious interference with contract. We also reverse the trial court's grant of summary judgment to the plaintiffs on Audrey Tolson's counterclaim for quantum meruit and unjust enrichment.

"Summary judgment is appropriate when no genuine issues of material fact remain and the movant is entitled to judgment as a matter of law. On appeal, we review the grant or denial of summary judgment de novo, construing the evidence and all inferences in a light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Seki v. Groupon, Inc.*, 333 Ga. App. 319 (775 SE2d 776)

2

(2015). Based upon the particular facts necessary to analyze the various theories of recovery at issue in this case, we will outline the pertinent facts below as they become relevant.

1. *Money Had and Received*. In its complaint, the Cochran Firm asserted: "By receiving fees that were largely derived from the Cochran Firm's efforts, and by refusing to pay any portion of those fees to the Cochran Firm, Defendants have received into their possession funds, that . . . the Cochran Firm is entitled to recover and which the Defendants are not entitled in good conscience to retain." In their response to the defendants' summary judgment motion and in their brief on appeal, the Cochran Firm conceded that the defendants were entitled to summary judgment in their favor on this portion of its complaint. Based upon this Court's opinion in *William N. Robbins, P. C. v. Burns*, 227 Ga. App. 262, 265 (2) (488 SE2d 760) (1997), the Cochran Firm rightly conceded this issue. A claim for money had and received can only be asserted by the "true owner" of money for a refund. Id. As in *Robbins*, the "[Cochran] firm was not the 'true owner' of the money which the clients paid [Tolson]." Id. The trial court therefore erred by failing to grant summary judgment to Tolson on this theory of recovery in the Cochran Firm's complaint.

2. *Audrey Tolson's Liability for Breach of Loyalty or Fiduciary Duty.* It is well-established that "a cause of action against an [at-will] employee for breach of loyalty must be based upon a fiduciary duty owed by the employee and must rise and fall with any claim for breach of fiduciary duty." (Footnote omitted.) *Physician Specialists in Anesthesia v. Wildmon*, 238 Ga. App. 730, 735 (3) (521 SE2d 358) (1999).

> A fiduciary or confidential relationship arises where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc. OCGA § 23-2-58. Such relationship may be created by law, contract, or the facts of a particular case. Moreover, since "a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve.

(Citations and punctuation omitted.) *Wright v. Apartment Investment and Management Co.*, 315 Ga. App. 587, 592 (2) (a) (726 SE2d 779) (2012).

In this case, the Cochran Firm asserts Tolson owed a fiduciary duty based upon her status as its agent. In support of this assertion, a partner submitted an affidavit averring that: Audrey Tolson was the "primary point of contact at the Firm for many

4

cases, including the ones at issue in this litigation"; that she had authority to enter into client engagement agreements on behalf of the law firm without prior approval; that she had authority to accept or reject cases; and solicited business on the law firm's behalf. This evidence creates a genuine issue of material fact as to whether Audrey Tolson was a fiduciary owing a duty of loyalty. See id. at 593 (2) (a).

> The relation of principal and agent is a fiduciary one, and the latter can not make advantage and profit for himself out of the relationship, or out of knowledge thus obtained, to the injury of his principal; and the agency being established, the agent will be held to be a trustee as to any profits, advantages, rights, or privileges under any contract made and obtained within the scope and reason of such agency. . . .

(Citations and punctuation omitted.) *Smith v. Pennington*, 192 Ga. 478, 481 (15 SE2d 727) (1941). Accordingly, we have held that an agent "cannot engage in acts in direct competition with the employer's business before the employment relationship ends [Cit.]," *Fine v. Communication Trends*, 305 Ga. App. 298, 309 (6) (699 SE2d 623) (2010) (physical precedent only) or "solicit customers for a rival business before the end of his employment." *Sitton v. Print Direction*, 312 Ga. App. 365, 372-373 (5) (718 SE2d 532) (2011). See also *Hanson Staple v. Eckelberry*, 297 Ga. App. 356, 359

5

(1) (677 SE2d 321) (2009). With regard to a departing attorney's solicitation of an employer's clients, the Restatement 3rd provides consistent authority:

Absent an agreement with the firm providing a more permissive rule, a lawyer leaving a law firm may solicit firm clients:

(a) prior to leaving the firm:

(i) only with respect to firm clients on whose matters the lawyer is actively and substantially working; and

(ii) only after the lawyer has adequately and timely informed the firm of the lawyer's intent to contact firm clients for that purpose; and

(b) after ceasing employment in the firm, to the same extent as any other nonfirm lawyer.

Restatement (Third) of Laws, The Law Governing Lawyers § 9 (3) (2000).

Here, the trial court properly concluded that Audrey Tolson was not entitled to summary judgment in her favor because genuine issues of material fact exist as to whether she acted in direct competition with the Cochran Firm and solicited existing clients before her employment ended. Audrey Tolson testified that she told the Cochran Firm's office manager at the end of the day on Friday, May 6 "that [she] was

6

leaving." She explained that she did not tell the office manager where she would be going because "I didn't know where I was going to go, so . . . I didn't tell her that. I just told her that I was leaving." She told no one else at the Cochran Firm that Friday that she intended to leave, and she did not take any personal items from her office home with her other than possibly her laptop.

The office manager testified that Audrey Tolson told her on Friday "that she made up her mind that she was going to go," but asked her not tell anyone. Tolson testified, "I don't know that I . . . told her one way or the other. I didn't – I don't think she asked me if she could tell anybody, but I don't think I told her not to tell anybody."

The following Monday, Audrey Tolson did not report for work and sent an email to a managing partner stating, in part:

> Because I won't be accepting a partnership in another big plaintiffs['] firm like I anticipated, I will be taking 7 of my clients with me, per the clients['] request. Just so you know, I have only notified a small number of my clients. All of the ones I notified are either cases that I brought in or that I have done most or all of the work on and am their primary point of contact with the firm. . . . I made sure that they were aware that, per the bar association rules, they have the right to choose whether they want to stay with the firm or go with me, and that I would be good with either decision. I did not attempt to persuade any of my clients to go

7

with me and I hope that you or no one in the office would attempt to dissuade those who have decided to do so. . . . I am leaving 20+ cases behind and would like to submit a joint letter so that the rest of my clients are aware of my departure and won't hold me responsible in their cases going forward and won't think I abandoned their case without any notice. . . . The clients in the following cases have authorized me to pick up their files from the office. . . . I told all of the clients I spoke to that, given our history, I didn't think they would need to sign anything and that it would probably be okay with you for me send a letter indicating that I have picked the original files up so that they would not have to incur copying cost. I hope I didn't speak out of turn, but I did not want to give the perception that there was any "in fighting" at the Cochran Firm.

Audrey Tolson testified that she did not contact any clients about her impending departure until the Sunday after she spoke with the office manager and that she did so only by telephone.

The Cochran Firm points to the following evidence to show that Audrey Tolson breached her duty of loyalty: the May 9 resignation email in which she admitted soliciting clients before formally terminating her employment; a client's testimony that Audrey Tolson told him in a personal meeting at the Cochran Firm no later than May 9th that she would be leaving the firm and that he could decide between her and the firm for continued representation; and the affidavit testimony of a client's

8

daughter who witnessed Audrey Tolson tell her mother on Saturday May 7 that she was leaving the Cochran Firm, that she wanted to take over the case, and "that it would be easier to leave the case with her, since she had performed the majority of the work on the file."

The above-referenced evidence shows a genuine issue of material fact as to whether Tolson's employment ended on Friday, May 6 or Monday, May 9. Accordingly, her solicitation of Cochran Firm clients over the intervening weekend may or may not have violated her fiduciary duty and duty of loyalty.[1]

Nothing in State Bar Formal Advisory Opinion 97-3 persuades us to reach a different result. It provides, in relevant part:

> With respect to the timing of the disclosure of the attorney's departure to the client, the ultimate consideration is the client's best interest. To the extent practical, a joint notification by the law firm and the departing attorney to the affected clients of the change is the preferred course of action for safeguarding the client's best interests. However, the

---

[1] To the extent the Cochran Firm's complaint and amended complaint asserted a cause of action against the Tolson Firm for breach of fiduciary duty and duty of loyalty, the Tolson Firm was entitled to summary judgment in its favor on these claims as the evidence raises no genuine issue of material fact as to whether the Tolson Firm owed a fiduciary duty to the Cochran Firm. Cf. *Automated Solutions Enterprises v. Clearview Software*, 255 Ga. App. 884, 888 (2) (567 SE2d 335) (2002).

appropriate timing of a notification to the client is determined on a case by case basis. Depending on the nature of the departing attorney's work for the client, the client may need advance notification of the departure to make a determination as to future representation.

*The departing attorney may also owe certain duties to the firm which may require that the departing attorney should advise the firm of the attorney's intention to leave the firm and the attorney's intention to notify clients of his or her impending departure, prior to informing the clients of the situation.* Specifically, the departing attorney should not engage in professional conduct which involves "dishonesty, fraud, deceit, or willful misrepresentation" with respect to the attorney's dealings with the firm as set forth in Standard 4.

In conclusion, as long as the departing attorney complies with the Standards governing advertisements, solicitation, and general professional conduct, the attorney may ethically contact those clients with whom the attorney had significant contact or active representation at the former law firm, so as to advise the clients of the attorney's departure as well as the client's right to select his or her legal counsel. Legal issues which may arise from a particular set of facts involving a departing attorney including, but not limited to, contract or tortious interference with contract, are beyond the scope of this formal advisory opinion.

(Emphasis supplied.) Id.

10

3. *Quantum Meruit*. Based upon this court's decision in *Tolson v. Sistrunk*, 332 Ga. App. 324 (772 SE2d 416) (2015) ("*Tolson I*"), Tolson and her firm concede that the trial court properly denied summary judgment in their favor on the Cochran Firm's claim for quantum meruit. In *Tolson I*, this court addressed the validity of an attorney's lien filed by the Cochran Firm against the proceeds of a lawsuit filed by Tolson on behalf of one of its former clients. We concluded that "predecessor counsel who performed legal work for a client in developing a lawsuit is authorized to place a lien on the suit when it is filed for the client by successor counsel." Id. at 332 (1). With regard to the amount of fees that can be awarded, we held "where, as here, the discharged attorney is entitled to seek fees from former co-counsel under a theory of quantum meruit, the measurement of fees still must be tied to the services that were rendered by the discharged attorney to and for the benefit of the client." (Citations and footnote omitted.) Id. at 333 (2) (a). Accordingly, we affirm the trial court's denial of Tolson's motion for summary judgment on the Cochran Firm's claim for quantum meruit.

4. *Unjust Enrichment*. "The theory of unjust enrichment is basically an equitable doctrine that the benefitted party equitably ought to either return or compensate for the conferred benefits when there was no legal contract to pay."

11

(Citation, punctuation and footnote omitted.) *Bedsole v. Action Outdoor Advertising JV*, 325 Ga. App. 194, 200 (3) (750 SE2d 445) (2013). Unjust enrichment is "premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received." (Citation, punctuation and footnote omitted.) *Jackson v. Ford*, 252 Ga. App. 304, 308 (1) (d) (555 SE2d 143) (2001). "A claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails." (Citations and punctuation omitted.) *Wachovia Ins. Services v. Fallon*, 299 Ga. App. 440, 449 (6) (682 SE2d 657) (2009).

In its claim for unjust enrichment, the Cochran Firm alleged that it "provided overhead, advertising, and significant money to obtain [its] clients"; that it "provided thousands of dollars in expenses to prosecute the cases on behalf of these clients"; "paid the salaries of secretaries and paralegals to work on these cases for the benefit of [the firm], not Tolson"; "the knowledge, funds and resources Tolson gathered as an employee of [the firm] were used and benefitted Tolson as she litigated and continues to litigate each case"; Tolson "has received a benefit and an advantage by [the firm]'s funding and her work on these cases while she was employed by [the firm]." "Because [the Cochran Firm] asserts unjust enrichment as a separate tort and

12

not an alternative theory of recovery for a failed contract, this claim fails as a matter of law. [Cits.]" Id. Accordingly, the defendants were entitled to summary judgment in their favor on this portion of the plaintiffs' complaint.

5. *Interference with Contract.* Audrey Tolson and her firm assert that they were entitled to summary judgment in their favor on the Cochran Firm's claim for tortious interference with contract. The Cochran Firm's complaint, however, asserted this claim against only Audrey Tolson, and the firm acknowledged below, and in its brief on appeal, that Audrey Tolson cannot be held individually liable for interference with contract.[2] While the Cochran Firm argued below, and on appeal, that issues of fact exist with regard to a tortious interference with contract claim against the Tolson Firm, it never amended its complaint to assert this claim against the Tolson Firm. Accordingly, the only issue before us is whether its claim against Audrey Tolson survives summary judgment. See *Bowling v. Foster*, 254 Ga. App. 374, 379 (1) (b) n. 3 (562 SE2d 776) (2002).

"In order for a defendant to be a liable for tortious interference with contractual relations, one must be a stranger to both the contract and the business relationship

---

[2] This Court is not bound by a party's concession on appeal. See *Franklin v. Eaves*, Ga. App. (Case No. A16A0616, decided June 3, 2016).

giving rise to and underpinning the contract." (Citation and punctuation omitted.) *Parks v. Multimedia Technologies*, 239 Ga. App. 282, 291 (3) (f) (520 SE2d 517) (1999). As Audrey Tolson was not a stranger to the business relationship between the Cochran Firm and its former clients, the trial court erred by failing to grant summary judgment in her favor on this portion of the Cochran Firm's complaint. Id. See also *Lyman v. Cellchem International*, 335 Ga. App. 266, 269-270 (1) (b) (779 SE2d 474) (2015).

6. *Counterclaim for Quantum Meruit and Unjust Enrichment*. In Audrey Tolson's counterclaim, she asserted that during her employment with the Cochran Firm, she "received no salary or base pay; her compensation consisted solely of a share of contingent fee receipts by [the Cochran Firm] in cases on which she had worked." She further alleged that "[a]t the time she performed legal services on these cases, [she] expected payment for those services from Plaintiff when it received contingent fee income from those cases." Therefore, she contends that she is entitled to recover "in quantum meruit the value of the services she rendered" and that the Cochran Firm was "unjustly enriched by the value of the legal services performed by [her]."

14

(a) *Existence of Express Contract*. The Cochran Firm asserts that the trial court properly granted summary judgment in its favor on these claims because the existence of an express oral employment agreement precludes Tolson from recovering in quantum meruit or for unjust enrichment. See generally *Donchi, Inc. v. Robdol, LLC*, 283 Ga. App. 161, 167 (4) (640 SE2d 719) (2007). "There cannot be an express and implied contract for the same thing existing at the same time between the same parties. A plaintiff is estopped to recover on quantum meruit where there exists an express agreement." (Citation, punctuation and footnote omitted.) *Ga. Real Estate Properties v. Lindwall*, 303 Ga. App. 12, 15 (3) (692 SE2d 690) (2010). And "summary judgment should not be granted on that ground where . . . a jury must resolve whether a contract existed between the parties.[Cit.]" *Vernon v. Assurance Forensic Accounting*, 333 Ga. App. 377, 395 (7) n. 10 (774 SE2d 197) (2015).

Additionally,

although a plaintiff is estopped to recover in quantum meruit where the parties have an express agreement for the same thing existing at the same time between the same parties, a party is entitled to the reasonable value of services he performed which were outside the scope of the written agreement and the reasonable value of extra work performed in addition to what the contract contemplated can be recovered in quantum meruit. Thus, where a jury is presented with conflicting evidence

15

regarding whether the additional work was included in the original agreement, the contractor is entitled to assert a claim in quantum meruit.

(Citations and punctuation omitted.) *One Bluff Drive v. K. A. P., Inc.*, 330 Ga. App. 45, 49 (1) (766 SE2d 508) (2014).

In support of its claim that an express contract exists, the Cochran Firm pointed to Sistrunk's deposition testimony of an oral policy that associates leaving the firm before a case resolved would not be paid for the work they did on the file before leaving employment with the firm. "[O]ur understanding and agreement with all the folks who work on the case is you get a percentage of the fee on the case that's concluded while you're at the firm, that's concluded. If the case is not concluded, then you don't get a percentage of the fee. It's pretty simple."

Tolson asserts genuine issues of fact exist as to both her quantum meruit and unjust enrichment claims based upon her affidavit averring that she had no express agreement with the Cochran Firm concerning her compensation for work on cases that were settled after she left the firm, Specifically, she stated,

> At no time during my employment by Plaintiff was I party to a discussion of whether an associate would be paid for work performed during employment if a case was not resolved until after employment terminated. I had no understanding with Plaintiff as to that issue.

16

When I worked on cases during my employment with the firm, I expected to be paid by the firm if it earned a fee on the case.

The Cochran Firm counters that the *Prophecy* rule precludes Tolson from relying on this affidavit to create a genuine issue of material fact regarding the existence of an express contract. See *Prophecy Corp. v. Rossignol*, 256 Ga. 27-28 (343 SE2d 680) (1986) ("the testimony of a party who offers himself as a witness in his own behalf at trial is to be construed most strongly against him when it is self-contradictory, vague or equivocal"). It claims Tolson's deposition testimony conflicts with her affidavit and that a direct question in her deposition was not required to establish a conflict under *Prophecy*.

In her deposition, Tolson testified that she did not receive a salary because associate attorneys were paid with an "eat-what-you-kill system." Under this system, associate attorneys were assigned to an "intake day" where they would have the first opportunity to accept or reject a case. Her "pay was based on [her] ability to resolve cases. And once you resolved the cases, that 25 percent of the fee would be carved out for the lawyers, the associates working on the cases, and then you'd split it." Tolson also testified, "If the case paid off, the firm would pay me." She understood

that she was an at-will employee whom the firm could fire anytime, and that she also had the right to quit at any time. [3]

It may be true that "a direct question is not necessary to establish a conflict that implicates the *Prophecy* rule." *Whole Foods Market Group v. Shepard*, 333 Ga. App. 137, 139 (2) (775 SE2d 616) (2015) (physical precedent only). And, "the issue of whether a party-witness's testimony is inconsistent is to determined, not by individual words or phrases alone, but by the whole impression or effect of what has been said. [Cit.]" *Price v. Thapa*, 323 Ga. App. 638, 640 (745 SE2d 311) (2013). We have also recognized that "facts omitted from the earlier statements and testimony do not cause a conflict with the latter testimony; such testimony is merely fuller, more expansive, and complete." *Smith v. Vencare, Inc.*, 238 Ga. App. 621, 624 (1) (519 SE2d 735) (1999). Here, the statements in Tolson's affidavit do not conflict with her deposition

---

[3] The Cochran firm also points to the following statement made in Tolson's unverified answer: "The employment relationship between Defendant Tolson and the entity that employed her . . . was governed by a contractual understanding, and unjust enrichment does not lie." This statement, however, does not implicate the *Prophecy* rule. "*Prophecy Corp.* rests on the principle that a party knows what he has *sworn* and may not swear in contradiction to that which he has *sworn* to be true without explanation. The rule *was not intended to apply to an unsworn statement* of a party-witness, and we decline to so extend it." (Citations and punctuation omitted; emphasis in original.) *Wahnschaff v. Erdman*, 232 Ga. App. 77, 80 (2) (502 SE2d 246) (1998).

18

testimony. Instead, they are more properly characterized as testimony that "is merely fuller, more expansive, and complete." Id. See also *Price*, supra.

Based upon the more complete testimony in Tolson's affidavit, we conclude that genuine issues of material fact exist as to whether an oral agreement existed that associate attorneys would not be paid for their work on cases if the case resolved after the associate's employment ended. Consequently, the Cochran Firm was not entitled to summary judgment on Audrey Tolson's counterclaim for quantum meruit and unjust enrichment on the ground that an express contract governed this issue.

(b) *Indefiniteness*. The Cochran Firm's alternative ground for summary judgment in its favor on Tolson's quantum meruit and unjust enrichment claims also fails. Relying upon this court's opinion in *Jackson*, supra, 252 Ga. App. 304, it asserts that any promise for future compensation must be "definitely and objectively ascertainable from the contract" and that the evidence shows that Tolson's claim for a percentage of the fee was too indefinite to be enforced. This argument has no merit because it attempts to apply contract law requiring definiteness to a claim for quantum meruit and unjust enrichment, which are by definition *not* claims based upon contract. The portion of the *Jackson* opinion relied upon by the Cochran Firm relates to a breach of contract claim, not quantum meruit and unjust enrichment.

19

(c) *Collateral Estoppel*. The Cochran Firm's collateral estoppel claim also lacks merit. Even if were to assume, without deciding, that the trial court's order in *Tolson I*, supra, could be used for a collateral estoppel claim, an examination of the trial court's order in that case does not support the Cochran Firm's claim that the trial court concluded that Tolson "was owed no individualized credit for work because she was providing services on behalf of the firm." In its order, the trial court merely stated:

> Because she was a W-2 employee when she did it, the court rejects Tolson's contention that she is entitled to the *entire* fee for any part of the Cochran Firm's work on Bryant's case for which she was responsible. . . . The 10% of the fee she will retain after execution of this order adequately compensates her for that work as an agent, as well as the work she conducted after May of 2011.

(Emphasis supplied.

For the reasons explained above, we affirm the trial court's denial of summary judgment to Audrey Tolson on the Cochran Firm's claims for quantum meruit and breach of fiduciary duty and duty of loyalty, reverse the trial court's denial of summary judgment to Tolson on the Cochran Firm's claims for money had and received, unjust enrichment, and tortious interference with contract, and reverse the

20

trial court's grant of summary judgment to the Cochran Firm on Audrey Tolson's counterclaim for quantum meruit and unjust enrichment.

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. Rickman, J., concurs in the judgment only.*