**SECOND DIVISION**
**MILLER, P. J.,**
**HODGES and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 14, 2022**

# In the Court of Appeals of Georgia

A21A1503. PRICE & CO. v. MAJORS MANAGEMENT, LLC et al.

HODGES, Judge.

In this case, Price & Co., a wholesaler of goods commonly stocked and sold in convenience stores, alleges that Scott Moon and the management company for which he works, Majors Management, should be held liable for the cost of certain inventory Price sold to Haroon Anwar and Anwar's business, HR Associates, Inc. (collectively "Anwar") to stock six convenience stores operated by Anwar. In proceedings below, the trial court granted summary judgment to Moon and Majors Management on all of Price's claims. Because Price has failed to prove any evidence of either an enforceable contract or enforceable promise from Moon or Majors Management to pay Anwar's past-due debts, we affirm.

The standards for summary adjudication are well settled.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment ruling enjoys no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. Importantly, it is not the role of this Court to sort through the evidence, resolve conflicts, and make findings of fact based on the evidence it finds credible. Rather, in our de novo review of a trial court's denial of a motion for summary judgment, we must determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Citations and punctuation omitted.) *Patel v. 2602 Deerfield, LLC*, 347 Ga. App. 880, 883-884 (819 SE2d 527) (2018). This standard guides our consideration.

In highly summarized form, the relevant facts show that Price sold goods to Anwar to stock a total of 22 convenience stores leased and operated by Anwar in Louisiana. Price sold this inventory without retaining a security interest in the goods, and the invoices issued by Price state that the inventory was "[s]old to: HR Associates, Inc."[1] Complicating the management structure of the 22 convenience stores, each one was held at the time of the transactions in issue by two separate limited liability companies – an "ownership" LLC that held the real property

---

[1] The orders were placed by Anwar or one of his associates directly to Price.

2

associated with each store and an "operating" LLC that was used to purchase alcohol for the stores and handle day-to-day business.

Majors Management is a company providing management services for gas stations and convenience stores, including the stores involved in this litigation.[2] Moon is a manager for Majors Management, and, in this capacity, oversees a large number of businesses, including hundreds of convenience stores owned or operated by Marvin Hewatt Enterprises and its subsidiaries.[3] Majors Management is not a member or a manager of any of the LLCs related to this case and has no interest in them, and, although Moon was a manager of the operating LLCs for the 22 convenience stores, he had no ownership interest in them. It is undisputed that the sole member of each operating LLC is Dustin Hewatt, the son of Marvin Hewatt (who owns Marvin Hewatt Enterprises).[4]

---

[2] Moon, in his role as manager of Majors Management, set up the 22 convenience stores involved in this litigation in the same way he set up the others for Marvin Hewatt Enterprises. Although all 22 stores are located in Louisiana, they were organized as 44 Georgia limited liability companies with their principal places of business identified as being in Georgia. In December of 2015, Majors Management dissolved the existing "operating" LLCs.

[3] Moon is also an employee of Marvin Hewatt Enterprises.

[4] Marvin Hewatt owns 50 percent of Majors Management and is the sole member of Marvin Hewatt Enterprises. Marvin Hewatt is also the sole member of the

Money earned by each of the convenience stores in issue here (as well as the hundreds of others owned by Marvin Hewatt Enterprises) was initially funneled into a single account managed by Majors Management (the "Majors Pool Account"). From this account, Majors Management could allocate funds to individual stores as needed to pay expenses. Moon, in his capacity as a manager of the operating LLCs, opened a bank account for each operating LLC involved in this matter. Majors Management also paid certain taxes and filed tax returns on behalf of the operating LLCs.

Over time, Anwar began defaulting on his obligations as lessor of the convenience stores. Between October and November 2015, all 22 stores previously leased by Anwar, including inventory, were transferred to Louisiana GX, LLC.[5] $920,219.89 was paid by Louisiana GX for the inventory contained in these 22 stores and deposited into the Majors Pool Account.[6] On October 5, 2015, Majors Management wired $321,466.77 from the Majors Pool Account to Price as payment

ownership LLCs involved in this matter.

[5] Anwar had been asked to vacate the stores due to performance issues.

[6] Moon acknowledged the amount Majors Management charged Louisiana GX, LLC for the inventory ($920,219.89) was "$17,619.23 short" of the amount owed to Price ($937,839.12). To make up for this shortfall, Marvin Hewatt directed Majors Management to deduct $17,619.23 from the amount it agreed to pay Anwar to vacate the stores he had been renting and operating.

4

for inventory held in 8 of Anwar's 22 former stores. On October 19, 2015, Majors Management wired Price an additional $218,408.30 from the Majors Pool Account as payment for merchandise Price had sold to 8 more of Anwar's stores. On Monday, November 2, 2015, Moon asked Price to provide statements indicating the remaining amount owed for the merchandise provided to Anwar's final 6 stores.[7] This remaining balance was determined to be $397,964.05.[8]

In the underlying action, Price contends that it has never been paid the balance owed. Price further contends that Majors Management and Moon should be found liable for the cost of its goods under a "kitchen sink" assortment of bases, including: (1) suit on open account; (2) unjust enrichment; 3) quantum meruit; (4) promissory estoppel; (5) money had and received; (6) fraud; (7) fraudulent/voidable transfers; (8) conversion; and (9) constructive trust. In addition, Price sought attorney fees.[9]

---

[7] In his email, Moon informed Price that "[w]e will be taking over these locations on Tuesday and Wednesday."

[8] Moon and Majors Management indicated that Price could not be paid because Anwar's debts exceeded the assets on hand, and there were insufficient funds to pay Price the full debt owed by HR Associates.

[9] In addition to Moon and Majors Management, Price named each of the six operating LLCs as a defendant.

5

On January 29, 2020, Price moved for partial summary judgment against Majors Management and Moon on its claims for suit on open account, unjust enrichment, promissory estoppel, money had and received, fraud, and attorney fees. To support its motion, Price contended that Moon and Marvin Hewatt made the decision not to pay Price the remaining $397,964.05. Price further contended that the six operating LLCs, along with Majors Management and Moon, remain obligated to pay Price for the inventory it alleges they should be considered to have received (as opposed to Anwar). On April 8, 2020, Majors Management and Moon moved for summary judgment on all of Price's claims. Following a hearing, the trial court denied Price's motion for summary judgment and granted Majors Management and Moon's motion for summary judgment on all claims. This appeal ensued.

1. Before delving into each of Price's individual claims, it is instructive to note that the contentions raised against Moon and Majors Management can be classified into two main categories: (1) claims that Moon, on behalf of himself and Majors Management, openly and affirmatively obligated themselves to pay Price for the inventory provided to Anwar to sell in his stores (open account, enforceable promise to answer for the debt of another, and promissory estoppel) and (2) claims that Moon and Majors Management should be legally or equitably required to pay for the

6

inventory because they employed some sort of artifice and trickery to prevent Price from receiving funds as to which Price claims entitlement (conspiracy, alter ego liability, unjust enrichment, fraud, fraudulent transfer, conversion, money had and received and constructive trust). Because Price never contracted directly with Moon or Majors Management for the provision of the inventory or payment therefor (Moon and Majors Management were managing middlemen), because Price failed to retain a security interest in the inventory, and because there is no evidence that Moon or Majors Management acted in any way to abscond with Price's unsecured inventory, neither category of claims can survive summary judgment. Each group of Price's claims will now be separately considered.

2. Price's first grouping of claims are all based on the same proposition: Moon, on behalf of himself and Majors Management, made an affirmative, legally enforceable promise to Price that they would be liable for the payment for inventory even if Anwar (or the operating LLCs) did not pay. These claims, however, have a common debilitating infirmity – such a guaranty would have to be in writing to be legally enforceable under the Statute of Frauds.[10]

---

[10] We note that, throughout its briefing, Price makes conclusory statements that the inventory was "sold to Moon and Majors." That, however, is Price's own conclusion, and that conclusion, in and of itself, does not create a question of fact.

Price premises almost all of its arguments that Moon promised to pay for inventory sold to Anwar on testimony from Misbah Chaudry, a corporate representative of Price. Chaudry stated that, in October of 2015, "Majors Management . . . assured us several times over the phone that they will take care of all the balances. And [Moon] also even said that he – go ahead and keep delivering to these stores because he's responsible for the payments." Chaudry further stated: "Scott Moon from Majors Management called me and assured me that he will take care of all these stores." But these promises are consistent with Moon and Majors Management acting in a management role for the underlying companies, as they had done for some time. And, up to that point, it is clear that Price sold its goods to and invoiced Anwar.[11] Price has produced no invoice that was ever directed to Majors Management or Moon in any capacity, which, of course, makes perfect sense if Majors Management and Moon were acting in a managerial function as opposed to an ownership function. So, the reality is that Price began looking to Moon and Majors Management to become guaranties of unsecured property *after* Price completed the

---

[11] In emails with Moon about the past due payments, Chaudry referred to the money as being "owed by Haroon [Anwar]." And, when asked why Price's invoices were addressed to Anwar's business, Chaudry responded, "Because they were responsible for making payments."

8

sale of those goods to Anwar and *after* Anwar defaulted on payments with regard to those goods.[12] And, despite the fact that Price contends that Moon advised Price to continue delivering goods to the stores after Anwar was removed, this suit does not involve any such items sold at a later date.

With all of this in mind, each of Price's claims in this category are quickly discounted, as follows:

(a) *Open Account*: Price contends that Moon and Majors Management should be held liable for the cost of the inventory provided to Anwar based on the creation of an open account. But an action for open account is not suitable for Price's claims.

> A suit on open account is available as a simplified procedure to the provider of goods and services where the price of such goods or services has been agreed upon and where it appears that the plaintiff has fully performed its part of the agreement and nothing remains to be done except for the other party to make payment.

(Citation and punctuation omitted). *Altacare Corp. v. Decker, Hallman, Barber & Briggs, P.C.*, 316 Ga. App. 718, 719 (730 SE2d 12) (2012). Furthermore,

> When there is a dispute that goes to either assent to the services, terms of the contract, what work was performed, the quality of the

---

[12] Price's attempt to create indirect liability for Moon by suing the operating LLCs does not change this characterization of the evidence. It is undisputed that Moon was a manager of the operating LLCs, and the actual control of those LLCs was vested solely in Dustin Hewatt.

> performance, or cost, then suit on account is not the proper procedure for suit, because there is a factual issue other than nonpayment on the account.

Id. Here, there is no written contract between the parties, and Price's allegations that an open account should be implied from course of conduct between the parties (as opposed to being created by an explicit and ongoing agreement that would lend itself to the simplified procedure of an open account), runs afoul of the prerequisites necessary for this doctrine – especially since the existence of a contract, much less its terms, is in direct dispute between the parties. For this reason alone, the trial court properly granted summary judgment in favor of Majors Management and Moon on this claim. Id.

(b) *Enforceable promise to pay the debt of another*: Price relies on the same testimony from Chaudry detailed above to contend that Moon, on behalf of himself and Majors Management, made an enforceable promise to pay for Anwar's debts. In other words, Price contends that Moon and Majors Management agreed to be guaranties. But, even if one puts aside all of the problems with Price's contentions and assumes that Moon and Majors Management did intend to be guaranties of Anwar's debt, any guaranty agreement would have to be in writing to be enforceable under the Statute of Frauds. See OCGA § 13-5-30 (a) (2) (a promise to answer for the

debt of another must be in writing and signed by the party to be charged therewith). This requirement has been interpreted to mandate further that a guaranty identify the debt, the principal debtor, the promisor, and the promisee. See, e.g., *Roach v. C. L. Wigington Enterprises*, 246 Ga. App. 36, 37 (539 SE2d 543) (2000).

None of these requirements has been met to create an enforceable guaranty in this case, as it is undisputed that there is no writing *at all*. And, contrary to Price's contentions otherwise, the part-performance exception to the Statute of Frauds is not implicated here, either. "Under that part performance exception, the writing requirement of the Statute of Frauds is inapplicable 'where there has been such part performance of the contract as would render it a fraud of the party refusing to comply if the court did not compel a performance.' OCGA § 13-5-31 (3)." *Carter v. Parish*, 274 Ga. App. 97, 99 (1) (616 SE2d 877) (2005). See also *Troutman v. Troutman*, 297 Ga. App. 62, 65 (1) (676 SE2d 787) (2009) (Statute of Frauds does not extend to cases where there has been part performance of the contract that would render it a fraud if performance of the refusing party were not compelled). An oral "contract sought to be enforced based on part performance must be certain and definite in all essential particulars." *Troutman*, supra. Additionally, "[w]ith respect to the part performance of a parol contract described in OCGA § 13-5-31 (3), to remove the

11

contract from the operation of the Statute of Frauds, the part performance shown must be consistent with the presence of a contract and inconsistent with the lack of a contract." (Citation, punctuation, and emphasis omitted.) *Payne v. Warren*, 282 Ga. App. 524, 526 (639 SE2d 528) (2006).

In the present case, the part performance exception is inapplicable because the evidence indicates that Price understood that Anwar was the purchaser and debtor, not Moon or Majors Management, and the inventory was sold to and re-sold in Anwar's stores, not separately by Moon and Majors Management. And, in any event, the promise upon which Price relies was made after the inventory involved in the present case had already been sold and invoiced to Anwar.[13] So, even if Moon and Majors Management could be considered to have engaged in the part performance of anything, it would relate to inventory not involved in the present action, but future inventory.

---

[13] On appeal, Price contends that the statements from Moon should be interpreted as creating an original obligation in which Moon and Majors Management are the principal debtors. But the facts do not support this characterization, and, even if they did, it would create an obligation going forward from that point in time. It would not retroactively cover inventory already sold by Price and to which Price no longer held title.

(c) *Promissory estoppel*: In close relation to its claim that Moon and Majors Management should be bound as guaranties, Price also argues that Moon and Majors Management should be liable on the basis of promissory estoppel. OCGA § 13-3-44 (a), which covers this doctrine, provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." To establish a promissory estoppel claim, Price would need to prove that

> (1) [Moon] made a promise or promises; (2) [Moon] should have reasonably expected [Price] to rely on such promise; (3) [Price] relied on such promise to [its] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, [Price] changed their position to their detriment by surrendering, forgoing, or rendering a valuable right.

(Citation and punctuation omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 412 (5) (634 SE2d 162) (2006). "[E]stoppels are not favored by our law." (Citation and punctuation omitted) *Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 95 (2) (a) (718 SE2d 35) (2011). "If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim [of promissory estoppel], that claim

13

tumbles like a house of cards. All other disputes of fact are rendered immaterial." *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Here, Price's promissory estoppel claim tumbles because, even if we again disregard all the other problems with Price's characterizations of Moon's promise, it is not an *enforceable* promise. See *Mooney v. Mooney*, 245 Ga. App. 780, 783-784 (538 SE2d 864) (2000). Instead, the promise which Price contends was made by Moon – namely to be responsible for Anwar's debt, would violate the Statute of Frauds, as just discussed. Furthermore, the evidence indicates that Majors Management and Moon were acting in a managerial capacity for the principal obligor, Anwar, and that Price looked to Anwar for payment of the inventory involved in this case.

2. Price's second class of claims, sounding in fraud and equity, is based on the premise that, in the absence of any contract, Moon and Majors Management manipulated Price to provide inventory to Anwar with some predetermined knowledge and scheme that Price would never be fully paid for the goods provided. But there is no viable evidence to support this, and, again, it appears that the representations upon which Price relies were made *after* Anwar had already been sold the inventory in question. So, Price once more attempts to *retroactively* make Majors

14

Management and Moon responsible for Anwar's debt through its claims of conspiracy, fraud, and the like. For this reason, and others discussed below, Price's claims in this category must also fail.

(a) *Fraud, conspiracy, and fraudulent/voidable transfer*: In related contentions of fraud, conspiracy, and fraudulent transfer,[14] Price argues that Majors Management and Moon, in association with Marvin Hewatt, acted to convince Price to provide inventory to Anwar with knowledge that Price would not be fully paid as part of a scheme. But, as just mentioned, Price raises no viable proof that this occurred.

In support of these arguments, Price claims that this is not the first time Moon has been involved in fraudulent activities and a conspiracy like the one it contends happened here. Price puts forward this observation on the erroneous conclusion that this case is identical to *Marvin Hewatt Enterprises, Inc. v. Butler Capital Corp.*, 328 Ga. App. 317 (761 SE2d 857) (2014). But a review of that case actually undercuts

---

[14] Under OCGA § 18-2-70 et seq., the "Uniform Voidable Transactions Act," debtors are prevented from evading creditors by making certain enumerated transfers. Price attempts to claim that Moon and Majors Management fraudulently transferred its inventory from Anwar to Louisiana GX. But Price's contention fails because it has not shown that Moon or Majors Management was a debtor to Price, and Price had no ownership interest in the inventory that was transferred because no security interest was retained.

15

Price's arguments in the current matter. Although that litigation did involve some of the same entities involved in this case (most significantly Marvin Hewatt Enterprises) and there were disputes over convenience store inventory, that case involved the breach of a *written contract* between Marvin Hewatt Enterprises, who owned the land, and a lender who had a *secured interest* in the goods. That, in actuality, is *completely different* from the present matter where Price, without any secured interest in the goods over which it is suing, is attempting to hold responsible Majors Management and Moon, non-owners of the property on which the stores sit, the stores themselves, or the inventory, for the price of unpaid inventory in the total absence of any written contract. Contrary to Price's arguments, these pivotal and significant differences show exactly why Price's claims in the current matter have no foundation upon which to stand.

In addition, Price is attempting to base justifiable reliance, a prerequisite to its fraud-based claims,[15] on alleged promises that were made after the inventory in question had already been sold to Anwar and at a time when the evidence indicates

___

[15] To establish fraud, Price is required to show: (1) a false representation by Moon; (2) scienter; (3) intention to induce Price to act or refrain from acting; (4) justifiable reliance by Price; and (5) damages. *Hanlon v. Thornton*, 218 Ga. App. 500, 501 (1) (462 SE2d 154) (1995).

16

that Price understood Anwar and his company to be the purchaser of the goods. Again, Price cannot retrofit statements made by Moon after the fact in order to rewrite its agreement with Anwar or fashion an obligation by Moon and Majors Management as the principal parties with respect to inventory *already sold under different terms*. And, in any event, the promise Price attempts to rely on remains unenforceable under the Statute of Frauds, and fraud is not an available remedy where the promise allegedly relied on is unenforceable. See *Beasley v. Ponder*, 143 Ga. App. 810 (240 SE2d 111) (1977) ( "Although fraud can be predicated on a misrepresentation as to a future event where the defendant knows that the future event will not take place, fraud cannot be predicated on a promise which is unenforceable at the time it is made." (Citations omitted)).[16]

(b) *Unjust enrichment, quantum meruit, money had and received, and constructive trust*: Recognizing the tenuous nature of its other arguments, Price also contends that Moon and Majors Management should be held liable based on the

---

[16] And Price's contentions that a conspiracy to take inventory from Price without paying for it may be inferred from Moon and Major's actions also fails. The evidence indicates that Moon and Majors Management worked as managers for the gas stations and for Marvin Hewatt Enterprises – not that they acted on their own. Therefore, the trial court properly granted summary judgment in favor of Moon and Majors Management on the claims of fraud and conspiracy.

equitable doctrines of unjust enrichment, quantum meruit, money had and received, and constructive trust. To prove any of these claims, however, Price would have to show that Moon and Majors Management improperly took and profited from the inventory Price sold to Anwar, and that it would be unfair for Moon and Majors Management to be allowed to do so. Of course, the problem that Price faces with any such claim is that it had no security interest in the inventory itself and no written contract or guaranty with Moon or Majors Management. And, as mentioned previously, the record shows that Moon and Majors Management's actions were consistent with doing their jobs as managers for Anwar on one hand and Marvin Hewatt Enterprises on the other.

(i) "The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." (Citation and punctuation omitted.) *Smith Svc. Oil Co. v. Parker*, 250 Ga. App. 270, 272 (4) (549 SE2d 485) (2001). "For unjust enrichment to apply, the party conferring the labor and things of value must act with the expectation that the other will be responsible for the cost." (Citation and punctuation omitted.) *Morris v. Britt*, 275 Ga. App. 293, 294 (1) (620 SE2d 422) (2005). But, as discussed above, the evidence shows that, *at the time Price sold the inventory in*

18

*question*, it considered Anwar to be the purchaser of the goods, and the promise on

which Price wishes to rely was made after Anwar defaulted. Thus, at the time the

inventory in issue was initially sold, Price could not have acted with the necessary

expectation that Moon and Majors Management would be guaranties of Anwar's debt

(an unenforceable expectation under the Statute of Frauds in any event).

(ii) "Under the theory of liability for quantum meruit[,] the essential elements

are: (1) the provider performed as agent services valuable to the recipient; (2) either

at the request of the recipient or knowingly accepted by the recipient; (3) the

recipient's receipt of which without compensating the provider would be unjust; and

(4) provider's expectation of compensation at the time of rendition of services."

(Citation omitted.) *Hollifield v. Monte Vista Biblical Gardens*, 251 Ga. App. 124,

128-129 (2) (a) (553 SE2d 662) (2001).

> The concept of unjust enrichment in law is premised upon the principle
> that a party cannot induce, accept, or encourage another to furnish or
> render something of value to such party and avoid payment for the value
> received; otherwise the party has been unjustly enriched at the expense
> of another and, in fairness and good conscience, must reimburse the
> other to the extent of the value conferred.

*Reidling v. Holcomb*, 225 Ga. App. 229, 232 (2) (483 SE2d 624) (1997). Again, there

has been no showing that Moon or Majors Management has been unjustly enriched

19

or provided with anything requiring repayment to Price. The inventory in question was sold to Anwar, not Majors Management or Moon, and Price retained no security interest. And, again, the promise on which Price attempts to rely was made after the inventory in this case had already been sold to Anwar, and, to the extent that Price relies on Moon's statement to Chaudry encouraging the continued sale of inventory to Anwar, that encouragement related to future sales, not the ones at issue here.

(iii) *Money had and received*: A claim for money had and received "is founded on the equitable principle that no one ought to unjustly enrich himself at the expense of another[.]" (Citation and footnote omitted.) *Time Ins. Co. v. Fulton-DeKalb Hosp. Auth.*, 211 Ga. App. 34, 35 (1) (438 SE2d 149) (1993). "An action for money had and received is merely one form of action to recover damages based on unjust enrichment." *Nat. City Bank of Rome v. Busbin*, 175 Ga. App. 103, 108 (6) (332 SE2d 678) (1985). Further, in order to prevail on a claim for money had and received, the plaintiff must be the "true owner" of the money. *Tolson Firm, LLC v. Sistrunk*, 338 Ga. App. 25, 26 (1) (789 SE2d 265) (2016). Because Price is an unsecured creditor, Price is no longer the "true owner" of the inventory already sold to Anwar. See OCGA § 11-2-401 (2) ("[u]nless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his or her performance with

20

reference to the physical delivery of the goods"). Therefore, in addition to the other reasons why Price has failed to establish unjust enrichment in general, this specific claim is untenable and cannot withstand the summary judgment standard.

(iv) With regard to a constructive trust, OCGA § 53-12-132 (a) provides that it is, "a trust implied whenever the circumstances are such that the person holding *legal title* to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." (Emphasis supplied.). In essence, "[a] constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment." *City of Atlanta v. Hotels.com, L.P.*, 332 Ga. App. 888, 892 (2) (b) (775 SE2d 276) (2015). As detailed above, Price's contentions on which he supports his constructive trust claim – namely fraud, conspiracy, and unjust enrichment – fail. In addition, Price did not retain title to the inventory after it was sold to Anwar, and Price had no security interest in the goods. See OCGA § 11-2-401 (2). As such, Price's constructive trust claim is untenable. Id. And, in any event, Price's constructive trust claim is also premised on an unenforceable promise which violated the Statute of Frauds.

(c) *Conversion*: Price argues that Moon and Majors Management converted its inventory. "To make out a prima facie case for recovery in an action for damages for

conversion of personal property, the plaintiff must show *title to the property*, possession by the defendant, demand for possession, and refusal to surrender the property, or an actual conversion prior to the filing of the suit." (Emphasis supplied.) *Atlantic Coast Line R. Co. v. McRee*, 12 Ga. App. 137 (76 SE 1057) (1913). Even if we assume Majors Management and Moon exercised dominion over the inventory, it is undisputed that Price did not have a security interest in those goods, and, at the time of this action, it cannot be said that Price holds title in the inventory. See OCGA § 11-2-401 (2). See, e.g., *Levenson v. Word*, 294 Ga. App. 104, 106-107 (1) (668 SE2d 763) (2008) (defendant entitled to summary judgment because evidence did not show that the property allegedly converted belonged to plaintiff). In the absence of evidence of legal title to the inventory, Price's claim fails. Id.

3. In addition to all of the claims above, Price also contends that Moon and Majors Management should be found liable on the basis of horizontal veil piercing, relying on *Cobra 4 Enterprises v. Powell-Newman*, 336 Ga. App. 609 (785 SE2d 556) (2016).[17] But, as that case recognizes:

[17] Price primarily bases this claim on the argument that, because Majors Management pooled money from the convenience stores into the Majors Pool Account without any escrow agreement, Majors Management should be considered an alter ego of all of the operating LLCs and held responsible for their debts.

22

Georgia courts have *never* applied the alter ego doctrine to impose liability in this manner. Moreover, other courts that have considered this issue have refused to impose liability in such circumstances. See, e.g., *Madison County Communications Dist. v. CenturyLink, Inc.*, CV–12–J–1768–NE, 2012 WL 6685672, *4 (N.D.Ala.2012) (finding no grounds to pierce the veil between sibling companies under Alabama law because there was no evidence that one corporation completely dominated and controlled the other); *Minno v. Pro–Fab, Inc.*, 121 Ohio St.3d 464, 468 (905 NE2d 613) (2009) ("[A] plaintiff cannot pierce the veil of one corporation to [impose liability] on its sister corporation.").

(Emphasis supplied.) Id. at 614 (2). We decline to accept Price's invitation both to incorporate the doctrine of horizontal veil piercing into Georgia jurisprudence and to use it to impose liability on Moon and Majors Management (a highly dubious result, in any event).

4. Because the trial court properly granted summary judgment on all of Price's claims against Moon and Majors Management, Price's claim for attorney fees under OCGA § 13-6-11was also appropriately disposed of by summary judgment.

5. Therefore, for all of the reasons set forth above, the trial court properly granted summary judgment in favor of Moon and Majors Management for all claims brought by Price.

*Judgment affirmed. Miller, P. J., and Pipkin, J., concur*.

23